Robert E. MADDOX, III,
Plaintiff–Appellant,

v.

UNIVERSITY OF TENNESSEE; University of Tennessee Board of Trustees; Doug A. Dickey, Defendants–Appellees.

No. 94–5820.

United States Court of Appeals,
Sixth Circuit.

Argued July 25, 1995.

Decided Aug. 21, 1995.

844

John E. Selent, Michael A. Valenti (argued and briefed), Hirn, Doheny, Reed & Harper, Louisville, KY, for Robert E. Maddox, III.

Robert E. Maddox, III, Louisville, KY, pro se.

Ronald C. Leadbetter, Assoc. Gen. Counsel (argued and briefed), Beauchamp E. Brogan (briefed), University of Tennessee, Knoxville, TN, for University of Tennessee, University of Tennessee Bd. of Trustees and Doug A. Dickey.

Before: BROWN, MILBURN, and NORRIS, Circuit Judges.

BAILEY BROWN, Circuit Judge.

The plaintiff-appellant, Robert Maddox, a former assistant football coach at the University of Tennessee, brought suit against the school, its Board of Trustees, and its athletic director, Doug Dickey (collectively "UT"), under § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, alleging discriminatory discharge on the basis of his disability, alcoholism. The district court granted UT's motion for summary judgment, concluding that Maddox was not terminated solely by reason of, or because of, his handicap, but rather, because of a well-publicized incident in which Maddox was arrested for driving under the influence of alcohol. Maddox appealed. We AFFIRM.

## I. FACTS

On February 17, 1992, Doug Dickey, acting as UT's athletic director, extended to Maddox an offer of employment as an assistant football coach. The position did not carry tenure and was terminable at will in accordance with the policies of the Personnel Manual. As part of the hiring process, Maddox completed an application. On the line after "Describe any health problems or physical limitations, which ... would limit your ability to perform the duties of the position for

which you are applying," Maddox wrote "None." In response to the question "have you ever been arrested for a criminal offense of any kind?" Maddox replied "No." These responses were not accurate. According to what Maddox alleges in this lawsuit, he suffers from the disability of alcoholism. Also, Maddox was arrested three times before 1992, once for possession of a controlled substance, and twice for driving a motor vehicle under the influence of alcohol. As to the first answer, Maddox claims that it is in fact correct because "it has never affected my coaching ability . . . I never drank on the job." As to the second question, Maddox claims that another university employee, Bill Higdon, advised him not to include the information concerning his prior arrests on the application.

On May 26, 1992, after Maddox began working at UT, a Knoxville police officer arrested Maddox and charged him with driving under the influence of alcohol and public intoxication. According to newspaper reports, the accuracy of which is not contested, Maddox backed his car across a major public road at a high rate of speed, almost striking another vehicle. When stopped by the officer, Maddox was combative, his pants were unzipped, and he refused to take a breathalyzer. He also lied to the arresting officer, stating that he was unemployed. This incident was highly publicized, and UT was obviously embarrassed by the public exposure surrounding the event.

Maddox entered an alcohol rehabilitation program at a UT hospital after his arrest. UT first placed Maddox on paid administrative leave. In June 1992, however, Dickey and then Head Coach Johnny Majors determined that the allegations were accurate and jointly issued a letter notifying Maddox that his employment was being terminated. They testified that termination was necessary because of: 1) the criminal acts and misconduct of Maddox; 2) the bad publicity surrounding the arrest; and 3) the fact that Maddox was no longer qualified, in their minds, for the

responsibilities associated with being an assistant coach.[1] Both Dickey and Majors deny that they were aware that Maddox was an alcoholic or that Maddox's alcoholism played any part in the decision to discharge him. Nevertheless, Maddox brought this action alleging that the termination was discriminatory on the basis of his alcoholism in violation of his rights under the Rehabilitation Act and the ADA. UT responded by filing a motion for summary judgment which the district court granted. The court recognized that, under both statutes, a plaintiff must show that he was fired by reason of his disability. In the court's view, summary judgment was appropriate because Maddox could not establish the existence of a genuine issue of material fact with respect to whether he had been fired by reason of his status as an alcoholic rather than by reason of his criminal misconduct. Maddox now appeals.

## II. ANALYSIS

### 1. Standard of Review

 Review of a grant of summary judgment is de novo, utilizing the same test used by the district court to determine whether summary judgment is appropriate. *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 887 (6th Cir.1993). A court shall render summary judgment when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. *See LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *United States v. TRW, Inc.,* 4 F.3d 417, 423 (6th Cir.1993).

### 2. Maddox was not terminated because of his disability

 Maddox raises a number of issues on appeal which he contends show that the district court erred in granting summary

---

1. In addition to the "coaching" responsibilities on the field, Coach Majors described other essential job functions of an assistant coach as: 1) the recruitment of high school football players, 2) serving as a positive role model for athletes on the university's football team, 3) counseling players on various issues, including the use and abuse of alcohol and drugs, and 4) promoting a positive image as a representative of not only the football program but the university as well.

judgment to the defendants. Maddox first alleges that the district court erred in analyzing his claim under the Rehabilitation Act. Section 504 of the Act provides, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[2] Thus, in order to establish a violation of the Rehabilitation Act, a plaintiff must show:

> (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). It is not disputed in this case that UT constitutes a program receiving Federal financial assistance under the Act. Likewise, we assume, without deciding, that alcoholics may be "individuals with a disability" for purposes of the Act. *See Tinch v. Walters*, 765 F.2d 599, 603 (6th Cir.1985); *Fuller v. Frank*, 916 F.2d 558, 560 (9th Cir.1990). Thus, our analysis focuses on whether Maddox is "otherwise qualified" under the Act and whether he was discharged "solely by reason of" his disability. The burden of making these showings rests with Maddox. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

█ In support of its motion for summary judgment, UT contended that both factors weighed in its favor. First, Dickey and Majors contended that they did not even know that Maddox was considered an alcoholic in making both the decision to hire and fire

him. Moreover, they contended that Maddox was discharged, not because he was an alcoholic, but because of his criminal conduct and behavior and the significant amount of bad publicity surrounding him and the school. UT alternatively contended that Maddox is nevertheless not "otherwise qualified" to continue in the position of assistant football coach.

The district court granted UT's motion for summary judgment, specifically holding that UT did not discharge Maddox solely by reason of his disability. The court found it beyond dispute that Maddox's discharge resulted from his misconduct rather than his disability of alcoholism. The court noted,

> "It cannot be denied in this case, Mr. Maddox was charged with ... [driving while under the influence and public intoxication] which would not be considered socially acceptable by any objective standard. The affidavit testimony of Mr. Dickey and Mr. Majors is clear on the point that it was this specific conduct, not any condition to which it might be related, which provoked the termination of Mr. Maddox's employment.

As a result, the court found it unnecessary to decide the alternative ground of whether Maddox was "otherwise qualified."

Maddox contends that the district court erred in distinguishing between discharge for misconduct and discharge solely by reason of his disability of alcoholism. Maddox claims that he has difficulty operating a motor vehicle while under the influence of alcohol and therefore he characterizes drunk driving as a causally connected manifestation of the disability of alcoholism. Thus, Maddox contends that because alcoholism caused the incident upon which UT claims to have based its decision to discharge him, UT in essence discharged him because of his disability of alcoholism. In support, Maddox relies on *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511, 516–17 (2d Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 54, 121

---

2. The ADA parallels the protection of the Rehabilitation Act, prohibiting employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees."

42 U.S.C. § 12112(a). The district court held that its reasoning with respect to the Rehabilitation Act claim applied with equal force to the ADA claim. We agree and will therefore review the respective claims accordingly.

L.Ed.2d 24 (1992), in which the Second Circuit held that a Rehabilitation Act plaintiff can show that he was fired "solely by reason of" his disability, or at least create a genuine issue of material fact, if he can show that he was fired for conduct that is "causally related" to his disability. In *Teahan*, the defendant company discharged the plaintiff because of his excessive absenteeism. The plaintiff responded by claiming that his absenteeism was caused by his alcoholism and therefore protected under the Rehabilitation Act. The district court disagreed and granted summary judgment for the employer because, the court found, Teahan was fired for his absenteeism and not because of his alcoholism. The Second Circuit reversed the district court's grant of summary judgment on appeal, however, rejecting the court's distinction between misconduct (absenteeism), and the disabling condition of alcoholism. The court presumed that Teahan's absenteeism resulted from his alcoholism and held that one's disability should not be distinguished from its consequences in determining whether he was fired "solely by reason" of his disability. *Id.* Thus, Maddox argues that, in the instant case, when UT acted on the basis of the conduct allegedly caused by the alcoholism, it was the same as if UT acted on the basis of alcoholism itself.

We disagree and hold that the district court correctly focused on the distinction between discharging someone for unacceptable misconduct and discharging someone because of the disability. As the district court noted, to hold otherwise, an employer would be forced to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee.

Despite *Teahan*, a number of cases have considered the issue of misconduct as distinct from the status of the disability. In *Taub v. Frank*, 957 F.2d 8 (1st Cir.1992), the plaintiff Taub, a heroin addict, brought suit against his former employer, the United States Postal Service, alleging discriminatory discharge under the Rehabilitation Act. The Post Office discharged Taub after he was arrested for possession of heroin for distribution. The district court granted the Post Office's motion for summary judgment and Taub appealed. The First Circuit affirmed and held that Taub could not prevail on his Rehabilitation Act claim because his discharge resulted from his misconduct, possession of heroin for distribution, rather than his disability of heroin addiction. The court reasoned that addiction-related criminal conduct is simply too attenuated to extend the Act's protection to Taub.

The conduct/disability distinction was also recognized by the Fourth Circuit in *Little v. F.B.I.*, 1 F.3d 255 (4th Cir.1993). In *Little*, the F.B.I. discharged the plaintiff, known by his supervisors to be an alcoholic, after an incident in which he was intoxicated on duty. The district court granted summary judgment in favor of the F.B.I. on the basis that the plaintiff was no longer "otherwise qualified" to serve as an F.B.I. agent. The Fourth Circuit affirmed, noting as an additional basis that the plaintiff's employment was not terminated because of his handicap. *Id.* at 259. The court noted, "based on no less authority than common sense, it is clear that an employer subject to the ... [Rehabilitation] Act must be permitted to terminate its employees on account of egregious misconduct, irrespective of whether the employee is handicapped." *Id.; see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1183 (6th Cir.1993)(Nelson, J., concurring) ("The plaintiff was clearly suspended because of his intolerable conduct, and not solely because of his mental condition.").

Moreover, language within the respective statutes makes clear that such a distinction is warranted. Section 706(8)(C) of the Rehabilitation Act states:

"[I]ndividuals with a disability" *does not include* any individual who is an alcoholic whose *current use* of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(8)(C)(v) (emphasis added). Likewise, the ADA specifically provides that

an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees "even if any unsatisfactory performance is related to the alcoholism of such employee." 42 U.S.C. § 12114(c)(4). These provisions clearly contemplate distinguishing the issue of misconduct from one's status as an alcoholic.

■ At bottom, we conclude that the analysis of the district court is more in keeping with the purposes and limitations of the respective Acts, and therefore, we decline to adopt the Second Circuit's reasoning in *Teahan.* Employers subject to the Rehabilitation Act and ADA must be permitted to take appropriate action with respect to an employee on account of egregious or criminal conduct, regardless of whether the employee is disabled. In the instant case, for example, while alcoholism might compel Maddox to drink, it did not compel him to operate a motor vehicle or engage in the other inappropriate conduct reported. Likewise, suppose an alcoholic becomes intoxicated and sexually assaults a coworker? We believe that it strains logic to conclude that such action could be protected under the Rehabilitation Act or the ADA merely because the actor has been diagnosed as an alcoholic and claims that such action was caused by his disability.

### 3. Pretext

■■ Maddox alternatively contends that even if UT has successfully disclaimed reliance on his disability in making the employment decision, the district court nevertheless erred in determining that Maddox had produced no evidence that the reasons articulated by UT were a pretext for discrimination. A Rehabilitation Act plaintiff may demonstrate pretext by showing that the asserted reasons had no basis in fact, the reasons did not in fact motivate the discharge, or, if they were factors in the decision, they were jointly insufficient to motivate the discharge. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

Maddox first alleges that Dickey and Majors knew that Maddox was an alcoholic. Setting aside for a moment the legal signifi-

cance of this statement, it is not supported factually in the record. Dickey and Majors, the district court found, had no knowledge of Maddox's previous criminal history prior to the DUI arrest involved here. In fact, Dickey states that if he had known of the prior arrests, he would not have hired him. More importantly, however, assuming that Dickey and Majors did know of Maddox's alcoholism, as we must do on a summary judgment motion, that knowledge does not translate into evidence that alcoholism was the basis for the termination. To the contrary, the university stated that the criminal conduct and the bad publicity surrounding it formed the basis of the termination, which we conclude is sufficient to motivate the discharge.

Maddox also claims that he knew of other coaches in the football program who drank alcohol in public and who were arrested for DUI but who were not discharged. This point is also irrelevant. Whether Maddox had such knowledge is immaterial. There is no evidence in the record establishing that *Majors or Dickey* had knowledge of the public intoxication of any other coach, or failed to reprimand or terminate any coach who they knew to have engaged in such behavior.

Maddox finally contends that UT's conclusion that he is no longer qualified to be an assistant coach at UT is without merit. Maddox claims that his misconduct did not affect his "coaching" responsibilities because an assistant coach's duties are limited to the practice and playing fields, and do not comprise of serving as a counselor or mentor to the players or serving as a representative of the school. Maddox relies on the fact that none of these functions were explained to him in his formal job description.

We first note that this allegation seems more appropriate for determining whether he was "otherwise qualified" rather than whether he was discharged because of his disability. Nevertheless, Maddox's position is simply unrealistic. It is obvious that as a member of the football coaching staff, Maddox would be representing not only the team but also the university. As in the instant case, UT received full media coverage because of this "embarrassing" incident. The school falls out of favor with the public, and

the reputation of the football program suffers. Likewise, to argue that football coaches today, with all the emphasis on the misuse of drugs and alcohol by athletes, are not "role models" and "mentors" simply ignores reality.

The district court's grant of summary judgment in favor of the defendants is **AFFIRMED**.