Rebecca CENTER, Plaintiff,

v.

CITY OF WEST CARROLLTON,
Defendant.

Case No. C–3–00–449.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 27, 2002.

Joyce Marie Deitering, Dayton, OH, for Plaintiff.

Robert Jerome Surdyk, Jenks, Surdyk, Oxly, Turner & Dowd, Dayton, OH, for Defendant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE CITY OF WEST CARROLLTON'S MOTION FOR SUMMARY JUDGMENT (DOC. # 14); CONFERENCE CALL SET TO RESCHEDULE TRIAL DATE AND OTHER DATES

RICE, Chief Judge.

The instant litigation arises from the alleged failure of Defendant City of West Carrollton to provide appropriate auxiliary aids to Plaintiff Rebecca Center, who is deaf. According to her Complaint (Doc. # 1),[1] on November 15, 1998, Plaintiff resided at 5509 Beavon Avenue in West Carrollton, Ohio. On that date, Plaintiff placed a telephone call to the West Carrollton Police Department, requesting assistance. Center alleges that she asked the police department to provide her with a qualified interpreter for the deaf or hearing impaired, but that it failed to do so. Plaintiff alleges that, as a consequence, she could not adequately communicate with the po-

---

1. Both Center and the City of West Carrollton have submitted evidence. In their affidavits, the parties dispute whether Plaintiff requested a qualified interpreter for the deaf and the consequence of Defendant's alleged failure to provide same. The Court will discuss the evidence, construing it in the light most favorable to Plaintiff, the non-moving party, in its analysis of Defendant's Motion.

lice officer who responded to her call, and that she has suffered emotional distress.

On September 11, 2000, Plaintiff initiated this lawsuit, setting forth three claims for relief, to wit: (1) a claim of disability discrimination, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) a claim of disability discrimination, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–34, and its regulations 28 C.F.R. Parts 35 and 36; and (3) a claim for violation of 42 U.S.C. § 1983, presumably based on violations of the Rehabilitation Act and the ADA.[2]

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. # 14). For the reasons assigned, Defendant's Motion is SUSTAINED in PART and OVERRULED in PART.

I. *Standard for Motion for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the materi-

---

2. Defendant asserts that Plaintiff has failed to state an ADA claim in her Complaint. The Court disagrees. Plaintiff's Complaint is captioned, "Complaint for Damages under the American with Disabilities Act." It cites to the ADA in the jurisdictional section, and Plaintiff alleges that Defendant's actions violate 28 C.F.R. Part 35, a regulation effectuating Title II of the ADA. Based on these allegations, Plaintiff has stated a claim under Title II of the ADA.

al facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ....") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on. a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Defendant's Motion for Summary Judgment (Doc. # 14)*

In its Motion for Summary Judgment, the City of West Carrollton asserts that Plaintiff cannot establish any of her claims. With regard to Plaintiff's claims under the Rehabilitation Act and the ADA, Defendant asserts that she cannot establish that she was denied benefits or subject to discrimination, due to her disability. In particular, Defendant asserts that Officer Brodbeck, the police officer who responded to Plaintiff's telephone call, was able to communicate effectively with her, and that he did not need the assistance of an interpreter. Defendant also asserts that Plaintiff cannot establish a § 1983 claim, because she has not alleged a violation of a Constitutional right and she cannot prevail on her Rehabilitation Act or ADA claim.

### A. *Plaintiff's Claims under the Rehabilitation Act and the ADA*

Section 504 of the Rehabilitation Act prohibits entities receiving federal funds

from discriminating against individuals with disabilities. It provides, in relevant part: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a) (1988 & Supp. IV 1992). Section 202 of the ADA prohibits a state and local governments from discriminating against disabled individuals. Like § 504, it provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress has dictated that Title II of the ADA be interpreted in a manner consistent with section 504 of the Rehabilitation Act. See 42 U.S.C. §§ 12134(b), 12201(a); *Owens v. O'Dea,* 1998 WL 344063(6th Cir. May 27, 1998). Thus, because the purpose, scope, and governing standards of the "[A]cts are largely the same, cases construing one statute are instructive in construing the other." *McPherson v. MHSAA,* 119 F.3d 453, 460 (6th Cir.1997) (en banc) (quoting *Andrews v. State of Ohio,* 104 F.3d 803, 807 (6th Cir.1997)); *Toyota Motor Mfg., KY, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 689–90, 151 L.Ed.2d 615 (2002).

 To establish a *prima facie* violation of section 504 of the Rehabilitation Act or section 202 of the ADA, a plaintiff must show that: (1) the plaintiff is a "handicapped person" under the Act; (2) the plaintiff is "otherwise qualified" for participation in the program; and (3) the plaintiff is being excluded from partic-

ipation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of her handicap. The Rehabilitation Act contains an additional requirement that the relevant program or activity is receiving Federal financial assistance. *Livingston v. United States Postal Serv.,* 1998 WL 791828 (6th Cir.1998), citing *Maddox v. University of Tennessee,* 62 F.3d 843, 846 (6th Cir.1995). Plaintiff must further establish that the disability existed at the time of the alleged discriminatory act. *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876 (6th Cir.1996). For purposes of its Motion, Defendant concedes that Plaintiff is disabled, that she was qualified to request and to use police services, and that it is the recipient of federal financial assistance.

### 1. *Provision of Auxiliary Aids*

In her Complaint, Plaintiff asserts that Defendant failed to provide appropriate auxiliary aids (*i.e.,* an ASL interpreter) when it responded to her telephone call, reporting a crime. 28 C.F.R. § 35.160, a regulation promulgated by the Department of Justice to implement Title VII of the ADA, provides, in pertinent part:

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.

28 C.F.R. § 35.160. With regard to the deaf and hearing impaired, auxiliary aids and services include:

> Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.

28 C.F.R. § 35.104(1).

■ Appendix A to Part 35 of the ADA regulations expounds on the regulations, stating, in pertinent part:

> [A]lthough in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

28 C.F.R. Pt. 35, App. A. Section 35.164 sets forth limitations on the duty to provide auxiliary aids, stating:

> This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens.

28 C.F.R. § 35.164. The Appendix further explains that: "The public entity shall honor the choice [of auxiliary aid] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164." Thus, as articulated in the Appendix, the ADA and, by analogy, the Rehabilitation Act require that a public entity must give deference to a disabled person's choice of auxiliary aid, unless it can demonstrate that another effective means of communication exists, or that use of the means chosen would not be required under § 35.164.[3]

In support of its Motion for Summary Judgment, Defendant has submitted the affidavit of Officer Brodbeck, in which he asserts that he effectively communicated with Plaintiff using handwritten notes. Specifically, Officer Brodbeck states that, at approximately 10:17 a.m., on November 15, 1998, he received a dispatch that Plaintiff had placed a telephone call to the West Carrollton Police Department and had reported that the rear window of her automobile had been broken (Brodbeck Aff.

---

**3.** Plaintiff argues, without qualification, that her choice of auxiliary aid *must* be followed. Although Appendix A certainly indicates that her choice should be given deference, it does not mandate that an individual's choice be provided. Rather, as stated in the Appendix, "[d]eference to the request of the individual with a disability is desirable," but not absolutely required. 28 C.F.R. Pt. 35, App. A at 487; *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C.Cir.1997). A different auxiliary aid may be provided, so long as it is effective.

¶ 3). He was aware that Plaintiff was deaf and, therefore, he brought a notepad and a pen with him in order to communicate with her effectively and promptly (*id.*) Officer Brodbeck further indicated that Plaintiff stated, through written dialogue, that between the hours of 10:00 p.m. on November 14, 1998, and the time that her call was received by dispatch on November 15th, someone had broken the rear window of her vehicle as it was parked in her driveway (*id.*). Plaintiff further informed Officer Brodbeck that nothing was missing from the vehicle (*id.*). Officer Brodbeck states that he investigated the scene, but he could not determine what kind of object was used to breach the car window (*id.* ¶ 4). Thereafter, he checked with neighbors for any further information, but they were unable to provide assistance (*id.*) He then advised Center that, according to Department procedure, the case would be inactive unless and/or until suspects were developed. He then departed Plaintiff's residence (*id.*) Officer Brodbeck specifically states in his affidavit that Plaintiff never requested an interpreter, and that he could effectively communicate with her and understand her by use of the notepad (*id.* ¶ 5). He states that he could clearly understand Plaintiff's concerns and that he was able to investigate the scene fully, based on their written conversation (*id.* ¶ 6). He further asserts that an interpreter was unnecessary, and that Plaintiff received the same consideration as any other citizen with a similar complaint (*id.*).

In response, Plaintiff has filed an affidavit, in which she indicates that, upon Officer Brodbeck's [4] arrival, she requested an American Sign Language ("ASL") interpreter (Center Aff. ¶ 4). She indicates that Officer Brodbeck attempted to communicate with her through written notes, but that she continued to insist that she be provided an ASL interpreter, because she is not proficient in written English and she felt that she needed to report a serious case (*id.* ¶ 5). Plaintiff states that Officer Brodbeck refused to request an ASL interpreter for her, and that, consequently, she was unable to communicate effectively with him (*id.* ¶¶ 6–7). Plaintiff further states that, as a result of Defendant's failure to provide an interpreter, she became very frustrated and she believes that her case was not investigated like the cases of other residents of the City of West Carrollton (*id.* ¶¶ 8, 10).[5]

Construing the evidence in the light most favorable to Plaintiff, the non-moving party, Plaintiff has demonstrated that she sought the services of the West Carrollton Police Department and that she repeatedly requested a sign language interpreter to assist in her communication with Officer Brodbeck, the responding police officer. She has further provided evidence that her requests were denied. Defendant has provided no evidence that Plaintiff's request fell within the scope of 28 C.F.R. § 35.164, *i.e.*, that the provision of an interpreter would fundamentally alter the nature of the police department's services or would

**4.** Plaintiff's affidavit states that Officer Brian Broderick responded to her call to the West Carrollton Police Department. The Court assumes that this is a typographical error, and that she is referring to Officer Brian Brodbeck.

**5.** In its Reply Memorandum (Doc. # 21), Defendant asserts that Center has rested upon the allegations in her Complaint, which is insufficient to survive summary judgment. The Court disagrees. Although Plaintiff's affidavit resembles the allegations in her Complaint, she has provided a sworn statement, averring that the facts therein are true. Thus, she has not rested upon the unsworn statements in her Complaint but, rather, she has provided evidence to support those assertions.

constitute an undue burden.[6] Thus, the pivotal question is whether Officer Brodbeck's use of handwritten notes to communicate with Plaintiff was effective.

 Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment. *Chisolm v. McManimon,* 275 F.3d 315, 327–328 (3d Cir.2001); *see Randolph v. Rodgers,* 170 F.3d 850, 860 (8th Cir.1999); *Duffy v. Riveland,* 98 F.3d 447, 454, 455 (9th Cir.1996); *Davis v. Flexman,* 109 F.Supp.2d 776 (S.D.Ohio 1999) (Rice, C.J.); *Estate of Ellen Alcalde v. Deaton Specialty Hosp. Home, Inc.,* 133 F.Supp.2d 702, 707 (D.Md.2001); *Hahn v. Linn Co., Iowa,* 130 F.Supp.2d 1036, 1057 (N.D.Iowa 2001). In the present case, Plaintiff has provided evidence that she is not proficient at written English and that she became very frustrated by the use of handwritten notes. She has provided further evidence that she was unable to communicate effectively with Officer Brodbeck, despite his belief that she was able to convey information

about her case and that he could understand her.[7] Construing this evidence in the light most favorable to her, Plaintiff has created a genuine issue of material fact as to whether communication through handwritten notes constituted an effective auxiliary aid. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's ADA and Rehabilitation Act claims.

### 2. Damages

In its Motion, Defendant contends that Plaintiff was not damaged by any of its acts, arguing that Officer Brodbeck took the appropriate and necessary steps to ensure effective communication. Defendant asserts that Officer Brodbeck was attentive to Plaintiff's needs, and did not display any deliberate indifference or discriminatory intent. Defendant further argues that punitive damages are unavailable under § 504. Plaintiff responds that she, in fact, was unable to communicate effectively with Officer Brodbeck, and that she became frustrated and suffered mental an-

6. Although it does not cite to § 35.164, Defendant asserts in its Reply Memorandum that the Court should take into account the issues of safety and of the orderly administration of law enforcement when considering the reasonableness of an accommodation. Defendant argues that requiring an interpreter for all calls from a hearing-impaired individual would delay the delivery of police service and impose an undue financial burden on the City. In the present circumstance, Officer Brodbeck was responding to a dispatch that Plaintiff's car had been broken into sometime during the previous night. Although the Court agrees that the need for the provision of an interpreter depends upon the circumstances, there is no evidence that Plaintiff's situation could not wait for the services of an interpreter. *See McCray v. City of Dothan,* 169 F.Supp.2d 1260, 1275 (M.D.Ala.2001) (concluding that police had an obligation under the ADA and the Rehabilitation Act to provide interpreter in effecting arrest activities, where there was no exigent situation which required officers to hurry in gathering

information for the property damage report and there was no evidence suggesting that the plaintiff posed any "threat to human safety" which created a necessity for questioning him or arresting him prior to complying with his request for an interpreter).

7. Defendant asserts in its Reply Memorandum that Plaintiff does not dispute the facts in Officer Brodbeck's affidavit, which states that he was able to obtain necessary facts about the crime, to investigate the scene, and to prepare a police report. The City further argues that Center has not indicated how the communication with handwritten notes was ineffective. Although Plaintiff has not indicated that she was unable to provide information to Officer Brodbeck or was unable to obtain information from him, the Court cannot conclude, as a matter law, that communication through notes was effective, in light of Plaintiff's evidence that she was not proficient at written English and she became very frustrated by that means of communication.

guish as a result. She further argues that punitive damages are permissible and appropriate.

■ The Sixth Circuit has recognized a private cause of action for compensatory damages under § 504 of the Rehabilitation Act. *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789 (6th Cir.1996). In *Davis, supra,* this Court noted that a number of courts of appeals have held that entitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff. 109 F.Supp.2d at 790, n. 14, citing *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2d Cir.1998), vacated on other grounds, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999), and *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir.1999). As stated in *Powers,* "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." 184 F.3d at 1153. This Court agreed that compensatory damages are available upon a showing of "deliberate indifference." *Davis,* 109 F.Supp.2d at 790, n. 14.

■ Viewing the evidence in the light most favorable to Rebecca Center, Plaintiff requested an ASL interpreter upon Officer Brodbeck's arrival at her residence. She further states in her affidavit that after he attempted to communicate with her through written notes, she continued to insist on the provision of an interpreter, due to the fact that she is not proficient at written English and she felt that she needed to report a "very serious" case. Defendant did not provide an interpreter, despite Plaintiff's repeated requests. Accepting this evidence as true, a reasonable trier of fact could conclude that Officer Brodbeck acted with deliberate indifference to Plaintiff's requests for an interpreter and to her federal rights.

■ As for punitive damages, in *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), the Supreme Court addressed whether punitive damages are available in private suits under the Rehabilitation Act and the ADA.[8] The Court looked to whether punitive damages are available under Title VI of the Civil Rights Act of 1964, the statute which sets forth the remedies available for suits under the Rehabilitation Act,[9] and concluded that punitive damages are unavailable under that statute. The Court further reasoned that because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act. Based on the Supreme Court's ruling in *Barnes,* Plaintiff may not obtain punitive

---

**8.** In *Barnes,* the plaintiff was a paraplegic, who suffered serious injuries when he was transported to a Kansas City police station in a van that was not wheelchair accessible. He sued police officials and officers for discriminating against him on the basis of his disability, in violation of § 202 of the ADA and § 504 of the Rehabilitation Act, by failing to maintain appropriate policies for the arrest and transportation of persons with spinal cord injuries.

**9.** Just as § 505(a)(2) of the Rehabilitation Act states that the "remedies, procedures, and rights set forth in title VI ... shall be available" for violations of § 504 of the Rehabilitation Act, the ADA similarly states that the "remedies, procedures, and rights" for violations of § 202 are the same as the "remedies, procedures, and rights set forth in" § 505(a)(2) of the Rehabilitation Act. 42 U.S.C. § 12133. Thus, the remedies for violation of Title ·VI, § 504 of the Rehabilitation Act, and § 202 of the ADA are coextensive.

damages for her ADA or Rehabilitation Act claim.

### B. *Plaintiff's § 1983 Claim*

Defendant seeks summary judgment on Plaintiff's claim under 42 U.S.C. § 1983, arguing that Plaintiff has not alleged a Constitutional violation and, therefore, her claim cannot succeed in the absence of a violation of the Rehabilitation Act or the ADA. As discussed, *supra,* there are genuine issues of material fact, precluding summary judgment on Plaintiff's § 504 claim and her ADA claim. Accordingly, Defendant likewise is not entitled to summary judgment on Plaintiff's § 1983 claim.

Defendant further argues that punitive damages are unavailable against the City under § 1983. Plaintiff responds that the Supreme Court has stated that punitive damages are appropriate under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." (Doc. # 20 at 7)(quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

The Supreme Court has long held that punitive damages are not available under § 1983 from a municipality. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see Chonich v. Wayne County Community College,* 973 F.2d 1271, 1274, n. 3 (6th Cir.1992). A significant part of the Court's reasoning was that deterrence of constitutional violations would be adequately accomplished by allowing punitive damage awards directly against the responsible individuals. *Id.; Smith,* 461 U.S. at 36, n. 5, 103 S.Ct. 1625. Thus, in *Smith,* the Court made clear that punitive damages are available in a suit against an official personally, even though they may not be awarded against the municipality itself. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 13, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In light of the long-standing precedent that punitive damages are unavailable against municipalities, Defendant's Motion for Summary Judgment on Plaintiff's claim for punitive damages under § 1983 is SUSTAINED.

In summary, Defendant's Motion for Summary Judgment is SUSTAINED in PART and OVERRULED in PART. The Court concludes that there are genuine issues of material fact as to whether Defendant provided effective auxiliary aids to Plaintiff and whether it acted with deliberate indifference to her request for an interpreter. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claims under the ADA and the Rehabilitation Act is OVERRULED. In light of the fact that Plaintiff's ADA and Rehabilitation Act claims remain, Defendant's Motion for Summary Judgment on Plaintiff's § 1983 claim, which is based on violations of those federal statutes, is likewise OVERRULED. However, Plaintiff cannot obtain punitive damages for those claims. Accordingly, Defendant's Motion for Summary Judgment on her request for punitive damages is SUSTAINED.

Counsel listed below will take note that a telephone conference call will be held, beginning at 8:30 a.m., on Tuesday, October 8, 2002, for the purpose of rescheduling a trial date and other dates leading to the resolution of this litigation.