**Seth LAYMAN, Plaintiff–Appellant,**

v.

**ALLOWAY STAMPING & MACHINE COMPANY, INC., aka Alloway's Stamping & Manufacturing Company, Inc., Defendant–Appellee.**

No. 01–6568.

United States Court of Appeals, Sixth Circuit.

March 31, 2004.

David J. Fulton, Valerie H. Richardson, Wooden, Ray Fulton & Scarborough, Chattanooga, TN, for Plaintiff–Appellant.

James D. Madewell, Madewell, Jared, Halfacre & Williams, Kenneth S. Williams, Madewell, Jared, Halfacre & Williams, Cookeville, TN, for Defendant–Appellee.

Before: GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Seth Layman ("Layman") appeals the judgment, entered after a jury trial, in favor of defendant Alloway Stamping & Machine Company, Inc. ("Alloway") on Layman's claim under the Americans with Disabilities Act, ("ADA") 42 U.S.C. §§ 12101–12213 (1994), for wrongful termination of his employment. Layman challenges specifically the jury instructions and the denial of a pre-trial motion *in limine*. Because we find the jury instructions either correctly stated the law or did not prejudice Layman, and because we find the trial court did not err in denying the motion *in limine*, we affirm the jury's verdict and the order of the district court.

**I.**

Seth Layman, a long-time employee of Alloway, suffered a serious injury resulting in the loss of four digits and most of the palm of his left hand in an accident that occurred while he was operating a press in the course of his employment on July 16, 1998. Layman succeeded in a workers' compensation suit, from which he received workers' compensation benefits and payment of medical expenses. In addition, Alloway voluntarily paid Layman the difference between his pre-injury earnings and the compensation he received under workers' compensation law; payment which exceeded that required under Tennessee law.

Prior to Layman's injury, the machine presses had been equipped with safety devices, but an operator's failure to use those devices did not automatically result in termination of employment. Following Layman's injury, Alloway implemented written shop safety rules for machine press operation, requiring the use of safety restraints by machine press operators to assure that the operators' fingers and hands could not enter the press when the press could cycle, and prohibiting operators from placing their hands inside the machine press at any time when the press could cycle. The written rules explicitly stated that violation of these rules would result in immediate termination of employment:

> These rules apply to anyone operating a power press. These are rules, not suggestions. Your safety and employment are dependent on you following them. Improper operation of any one of the power presses will result in immediate termination of employment. In this event, we will mail you your check at the end of the week.

In May 1999, Layman returned to work at Alloway. On May 18, 1999, he was given a copy of the shop safety rules. Layman is a slow reader and does not like to read, but he reviewed the rules and signed a statement acknowledging that he had read and understood them.

Layman was able to perform his work after returning, and was commended by Scott Gill ("Gill"), the plant manager, for doing as good a job as the other workers were doing. On June 15, 1999, however, Layman was assigned to a task operating the same press that he had been operating at the time of his injury. After starting the task, he stopped to inform Gill that he did not believe that he could perform the function-specifically, he did not think that he would be able to run the bars through the press while guiding them with only one hand. He did not tell Gill that he could not perform the job if he had to use the safety restraints or follow the safety rules. Gill told him to return to the task, and that he would get ear protection-required by the General Shop Rules-and meet Layman at the machine. When Gill arrived at the machine with Nancy Alloway, who is a supervisor at Alloway, they observed Layman operating the machine without the safety restraints, and with his non-damaged right hand inside the machine's point of operation at a time when it could cycle. Layman was immediately terminated for violating the shop safety rules.

Layman filed this action on August 28, 2000, claiming a violation of the ADA. 42 U.S.C. § 12117. Alloway moved for summary judgment; the motion was denied; and the case proceeded to jury trial. Before the trial began, Layman filed a motion *in limine* asking the court to exclude all evidence regarding Layman's workers' compensation claim against Alloway. Alloway opposed the motion and sought an order permitting it to introduce evidence that it had provided compensation to Layman during his rehabilitation in an amount greater than that required by Tennessee law. Alloway argued that this evidence was relevant to Layman's claim that Alloway discriminated against him because of his disability. The trial court ultimately denied Layman's motion and granted Alloway's.

At trial, Layman supported his claim of disparate treatment with evidence that prior to his termination, there had been at least two other rule violations that did not result in termination. The first involved Thomas Miller ("Miller"), who operated a machine with straps loose in violation of the policy. Gill testified that he decided to suspend rather than to terminate Miller because he did not actually witness the violation but only had "circumstantial evidence" that a violation had occurred. Following Miller's violation and punishment, the employees were admonished that future violations would result in termination, and they were required to read and sign copies of the rules.

The second example Layman presented was Thomas Shepherd, who testified that he had been seen by Gill operating a machine without safety restraints after Layman's 1998 injury, and that Gill took no action except to admonish Shepherd to put on his restraints. The record supports Alloway's contention, however, that Shepherd could not recall what time of year this event took place, and Shepherd specifically could not recall if this was before or after Miller's suspension, which triggered the requirement that all employees sign a copy of the new shop rules.

After hearing the proof at trial, the jury deliberated for 30 minutes before returning a verdict in favor of Alloway. Layman moved for a new trial pursuant to Federal Rule of Civil Procedure 59. The

district court denied Layman's motion, and this appeal followed.

## II.

### A.

The district court offered the following instructions to the jury:

> The parties have stipulated that Mr. Layman is a qualified individual with a disability under the ADA. This means that he was disabled under the ADA and was capable of performing the tasks of his job with or without reasonable accommodation. Thus, the only issue in this case is the reason for Mr. Layman's termination.
>
> In order to establish this claim of disability discrimination under the ADA, Mr. Layman must prove by a preponderance of the evidence that Alloway Stamping discharged him *solely because of his disability.*

(Emphasis added.) Layman argues that "the jury instructions incorrectly stated the elements Plaintiff was required to establish by a preponderance of the evidence." Specifically, Layman disputes that the appropriate standard to succeed on an ADA claim is "solely because of" disability. Before the trial court, however, Layman failed to object to the "solely because of" discrimination jury instruction, and we therefore review this objection for plain error only.

Objections to jury instructions are governed by Federal Rule of Civil Procedure 51, which provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51 (2003)(amended Dec. 1, 2003). This court has found that in the absence of "an express objec-

tion" to a jury instruction, "we may consider any such error not objected to as waived, except where there is 'plain error' or it 'required action by the reviewing court in the interests of justice.'" *Chonich v. Wayne Co. Comm. Coll.,* 973 F.2d 1271, 1275 (6th Cir.1992); *accord Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999).

■ Layman suggests that he did in fact object below on three occasions, but upon review none of his "objections" satisfy requirements of Rule 51 and *Chonich.* First, he suggests that he offered proposed jury instructions which did not utilize the "solely" language, thereby "putting the trial court on notice that he objected to the trial court's Charge to the Jury." While it is true that Layman did not use the word "solely," he did use similarly limiting language in suggesting a jury instruction which stated "[i]f you find by a preponderance of the evidence that other employees were warned or suspended for the same violation the defendant states justifies its termination of Mr. Layman, you may find that discrimination was *the* motivating factor in his termination." (Emphasis added.) Had Layman really wished to object to the "solely" instruction, in addition to issuing an express objection, we think that he would have offered a jury instruction consistent with that objection–that is, one which stated that under a set of conditions the juror may find "that discrimination was *a* motivating factor." Because his proposed instruction is actually consistent with the one to which he now objects, we cannot construe his first proposed jury instruction as an objection.

Layman next points to "Plaintiff's Objection to Jury Charge," in which Layman argued that "the proposed charge incorrectly states the law." This, however, is a blatant misrepresentation by omission of what Layman argued in his objection. The full sentence Layman quoted actually

reads: "As grounds therefore, Plaintiff would state that the proposed charge incorrectly states the law, *specifically regarding pretext.*" (Emphasis added.) If there was any question as to whether Layman intended "specifically regarding pretext" to refer to whether "solely because of" was the appropriate standard, that question is answered by looking at the second proposed instruction attached, which includes the following language: "In order to establish his claim of disability discrimination under the ADA, LAYMAN must prove by a preponderance of the evidence that ALLOWAY STAMPING discharged him *solely because of* his disability." (Emphasis added.) Layman attempts unsuccessfully to overcome this damaging language by stating that "the trial court was well aware of the fact that the Plaintiff did not consider the 'solely' standard to be a correct statement of the law governing the ADA. . . ." But that is just the point: Layman has failed to provide any evidence as to how the court was aware of this objection. We are left with his written language, and it is difficult indeed to see how an objection can recommend the very language which it is seeking to reject.

Layman finally argues that he did make an objection to the "solely" language by omitting "solely" from the pretext instruction. But the pretext instruction was in the paragraph following Layman's use of the term "solely because of." Counsel's construction does not even qualify as effective legerdemain.

 Therefore, because Layman failed to object below to the "solely because of" standard, the objection is waived, except to the extent that the court below committed plain error, or to the extent that action is required by this court in the interest of justice. *Chonich,* 973 F.2d at 1275. Because the district court relied upon clearly established Sixth Circuit precedent, the jury instructions do not constitute plain error.

Beginning in *Maddox v. University of Tennessee,* 62 F.3d 843 (6th Cir.1995), this court has found that the ADA parallels the protection of the Rehabilitation Act, and therefore this court essentially adopted in the ADA context the Rehabilitation Act's standard for a *prima facie* case. *Maddox,* 62 F.3d at 846 n. 2. Thus, to succeed on a claim under the ADA, a plaintiff must show: "(1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; [and] (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap."[1] *Id.* at 846. This standard was reaffirmed by *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996) (stating that to recover on a claim under the ADA, a plaintiff must establish the three elements discussed in *Maddox,* including prong three, the "solely by reason of" disability). *Monette* has subsequently been cited by this court as establishing the proper standard for a *prima facie* case under the ADA. *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 633 (6th Cir.1998) (citing the *Monette* three-prong test); and *Hile v. Pepsi–Cola Gen. Bottlers, Inc.,* No. 95–4361 1997 WL 112404, *3 (6th Cir.1997) (unpublished). While Appellant attempts at length to distinguish this test away as dicta from the *Monette* case and its progeny, this is an overly narrow reading of *Monette* which is not supported by the text.

1. While not relevant to this inquiry, the Rehabilitation Act also requires a showing of receipt of government funds-a finding which is not required under the ADA.

Alternatively, Appellant argues that *Monette* establishes a different test for establishing a *prima facie* case in the context of disparate treatment/indirect evidence claims. In this case, the Appellant argues, he was entitled to an instruction based upon the 5–factor standard articulated in *Monette* for establishing a *prima facie* case raising claims based upon indirect evidence.[2] This argument is wholly without merit. Layman and Alloway stipulated to the *prima facie* case. As the district court correctly noted in its denial of the Plaintiff's Federal Rule of Civil Procedure 59 motion for new trial, once the matter has been tried and a judgment rendered, the proper inquiry is not what constitutes a *prima facie* case, but rather what constitutes discrimination. "Following a trial on the merits, the district court, therefore, cannot return to a consideration of whether plaintiff has proven its *prima facie* case. This is a preliminary matter which cannot be revisited at a later time." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997). Quite simply, it cannot be error to fail to instruct the jury with regard to something that is not before them.

Accordingly, because the Appellant failed to raise an objection to the "solely because of" standard below, this court reviews for plain error. Because the Sixth Circuit adopted the "solely because of" test in *Monette*, and has used that test in subsequent cases, the district court's reliance on it is not plain error. Finally, because whether Layman established a *prima facie* case was not before the jury, he was not entitled to a jury instruction on that question.

## B.

■ In the alternative, Appellant argues that if this circuit does apply the "solely because of" disability standard in ADA cases, this panel should correct the error. We are sympathetic to Appellant's view of the law. The plain language of the statute strongly supports his reading. In applying the same rule for the ADA as for the Rehabilitation Act, the *Maddox* court (and *Monette*, which relied upon *Maddox*) failed to take into account that the language of the Rehabilitation Act prohibits discrimination *"solely* by reason of her or his disability,"* while the language of the ADA prohibits discrimination *"because* of the disability." *Compare* Rehabilitation Act, 29 U.S.C. § 794(a) (1994) (emphasis added), *with* ADA, 42 U.S.C. § 12112(a) (emphasis added).[3] It is therefore not sur-

---

**2.** As articulated in *Monette*, a plaintiff may establish a *prima facie* case of handicap discrimination by showing that: "1) he or she is disabled, 2) is otherwise qualified for the job, with or without 'reasonable' accommodation, 3) suffered an adverse employment decision, 4) the employer knew or had reason to know of his or her disability, and 5) after rejection or termination the position remained open, or the disabled individual was replaced." *Monette*, 90 F.3d at 1185 (internal citations omitted).

**3.** Appellant's comparison to Title VII is less convincing. In arguing that this court should adopt the "mixed motive" standard, Appellant claims that "[g]iven the fact that Title VII uses the exact same 'because of' language as the

ADA, it necessarily follows that the 'motivating factor' analysis also applies to ADA cases." Appellant fails to realize that Title VII is subject to mixed motives analysis not on the basis of the "because of" language, but rather because Congress modified the statute expressly to adopt that standard. 42 U.S.C. § 2000e–2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). Congress did so to codify the mixed motives position which failed to muster a majority of the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). H.R. Rep. 102–40(II), at

prising that a number of our sister circuits have found that a mixed motive analysis is appropriate. *See, e.g., Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 336–37 (2d Cir.2000) (adopting a mixed motive analysis, and noting the approval of the First, Fourth, Fifth, Seventh, Eighth and Eleventh Circuits to mixed motive analysis for ADA claims). *See Baird v. Rose,* 192 F.3d 462, 468 (4th Cir.1999) (expressly rejecting "solely because of" standard). Despite the persuasive textual argument and the weight of authority from other circuits, this court has established a standard to which this panel is bound. While review of the *Monette* standard may present an interesting question for the *en banc* court, we are bound by that decision. "This panel may not overrule the decision of another panel; the earlier determination is binding authority unless a decision of the United States Supreme Court mandates modification or this Court sitting en banc overrules the prior decision." *United States v. Moody,* 206 F.3d 609, 615 (6th Cir.2000) (citing *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985)).

### III.

Appellant next appeals the district court's instruction regarding pretext. Because the Appellant did object below to the instruction regarding pretext, this court "may reverse [the] judgment on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *Roberts v. Galen of Va., Inc.,* 325 F.3d 776, 787 (6th Cir.2003). *Roberts* clarified that this standard is conjunctive, and therefore to qualify for reversal a moving party must show prejudice. *Id.* at 787 n. 3. Accordingly, the *Roberts* court found that the jury

instructions at issue in that case were "erroneous" and "incorrect" but the court would not reverse because the plaintiff failed to prove prejudice. *Id.* at 788–89.

■ In the case before us, in instructing the jury on the question of pretext, the district court stated:

> If you find by a preponderance of the evidence that the defendant's reason for firing Mr. Layman is a mere pretext or "cover-up" for what was in truth disability discrimination, then you are permitted to infer that the defendant intentionally discriminated against the plaintiff. By pretext, I mean that the reason given by the defendant for its decision is not the real reason, but is a reason given to obscure the fact that the plaintiff's disability was the sole motivating factor.
>
> To prove that the defendant's asserted reason for firing him is pretextual, Mr. Layman must prove that the defendant's reason has no basis in fact or that the reason did not in fact motivate the decision to fire him.

Citing *Smith v. Chrysler Corp.,* 155 F.3d 799, 805–06 (6th Cir.1998), Layman argues that the district court's instruction was insufficient because it failed to list all three methods a plaintiff may use to establish pretext: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employment decision, which requires additional evidence of discrimination; or (3) that the proffered reasons were never used in the past to discharge an employee. Layman asserts that this error is particularly egregious because he sought to establish pretext by means of the third method, specifically by showing that Miller and

2–3 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549. The modification of Title VII to adopt the "motivating factor" standard suggests

that the "because of" language is not alone sufficient to trigger "mixed motives" review.

Shepherd were not fired despite violation of the rules.

While the test as spelled out by Layman has been used on some occasions, the more common exposition of the third method of proving pretext is found in *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), which this court applied to the ADA context in *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir.1996). Under the *Manzer* formulation, the first two methods are the same as in *Smith v. Chrysler Corp.*, however, the third method of proving pretext differs (at least in form): the plaintiff may establish that the reasons proffered by the employer for the termination "were *insufficient* to motivate discharge." *Manzer*, 29 F.3d at 1084 (emphasis in original); *accord Kocsis*, 97 F.3d at 883. The *Manzer* court noted that this showing ordinarily "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084.

■ While the district court's jury instruction specifically states the first and second methods of establishing pretext, it fails even to mention the third, utilizing either the *Smith* or *Manzer* formulation, and the instruction is therefore erroneous. We must therefore determine whether Layman was prejudiced by this error. We conclude that he was not. Layman's evidence was insufficient as a matter of law to permit a jury to find that other employees who violated the shop safety policy that was in place at the time of Layman's violation did not receive treatment similar to that which he received. As we discussed above, Miller was suspended rather than terminated for a violation that the plant manager did not actually witness and that

occurred prior to Alloway's new policy of requiring every employee to sign a copy of the safety rule–a policy that was clearly in place at the time of Layman's violation. The evidence regarding Shepherd is arguably even less probative. Shepherd testified that he could not recall whether his warning from the shop manager for an infraction of the safety rule occurred before or after Miller's suspension and the subsequent new policy requiring every plant employee to sign a copy of the safety rule. Shepherd's testimony therefore fails to establish whether his infraction occurred under the policy which was in place when Layman violated the rule. Accordingly, Layman provided no evidence that other employees were treated differently than he was under the policy which was in place at the time of his violation. For this reason, even if the jury had been given the appropriate jury instruction under *Kocsis*, Layman could not succeed on his claim. Accordingly, while we find that the jury instruction was erroneous under the standard adopted in *Kocsis*, Layman was not prejudiced by the error. Because there is no prejudice, this court may not overturn the jury's verdict.

## IV.

■ Appellant next argues that the trial court erred in permitting Alloway to introduce evidence of Layman's workers' compensation claim. Alloway counters that, notwithstanding the denial of Layman's motion *in limine* seeking to prevent introduction of this evidence, it was Layman who, on direct examination, first introduced evidence regarding payments received from Alloway. Because Layman opened the door to this evidence, Alloway argues, he cannot here object. *See United States v. Khalil*, 279 F.3d 358, 364 (6th Cir.2002); *United States v. Brown*, 276 F.3d 211, 218 (6th Cir.2002). Layman re-

sponds that the issue is whether the motion *in limine* should have been granted, not whether the door was opened by his direct examination. Specifically, he suggests that he introduced such evidence because the motion *in limine* has been denied. And Layman correctly contends that neither of the cases cited by Alloway addressed the situation at bar-that is, one in which a party whose motion *in limine* is denied introduces the evidence that party sought to keep out.

This court need not decide the issue of whether the introduction at trial of evidence that was the subject of a motion *in limine* waives the right to appeal the denial of the motion *in limine*. It is clear that the district court's decision to deny the motion was proper. The district court has broad discretion to determine the admissibility and relevance of evidence, and we will overturn those determinations only for abuse of discretion. *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 492 (6th Cir.1995). Here, the evidence concerning payments made by Alloway in excess of those required by Tennessee law as part of workers' compensation was clearly relevant to Layman's claim that Alloway had an intent to discriminate against him. The trial court therefore did not err in permitting the jury to hear this evidence.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.