287 F.3d 955
 Tommy GARRISON, Plaintiff-Appellee,
v.
BAKER HUGHES OILFIELD OPERATIONS, INC., d/b/a Centrilift, Inc., Defendant-Appellant.
Tulsa Area Human Resources Association; Oklahoma State Council for Human Resources Management, Amici Curiae.
 No. 01-5032.
 United States Court of Appeals, Tenth Circuit.
 April 19, 2002.
 
 COPYRIGHT MATERIAL OMITTED Steven R. Hickman of Frasier, Frasier & Hickman, Tulsa, OK, for Plaintiff-Appellee.
 Steven A. Broussard (William D. Fisher with him on the briefs) of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for Defendant-Appellant.
 W. Kirk Turner and Keith A. Wilkes of Newton, O'Connor & Turner, P.C., Tulsa, OK, filed a brief for amici curiae.
 Before SEYMOUR, Circuit Judge, BRORBY, Senior Circuit Judge, and LUCERO, Circuit Judge.
 BRORBY, Senior Circuit Judge.
 
 
 1
 A jury awarded Tommy Garrison $3,580.36 under 42 U.S.C. § 12112(d)(3) of the Americans with Disabilities Act for compensatory damages arising from a withdrawn job offer. Mr. Garrison's employer, Baker Hughes Oilfield Operations, Inc., doing business as Centrilift ("Centrilift") now appeals, arguing: (1) there was insufficient evidence to support the verdict; (2) the district court erred in enjoining Centrilift from allowing review of entering employees' workers compensation records by non-medical personnel; (3) the Americans with Disabilities Act does not provide for compensatory damages under § 12112(d)(3); and (4) the district court improperly instructed the jury. Our jurisdiction arises pursuant to 28 U.S.C. § 1291. After careful consideration, we reverse the district court's injunctive judgment and remand for proceedings consistent with this opinion, and we affirm in all other respects.
 
 BACKGROUND
 
 2
 Mr. Garrison applied for an assembly job in a Centrilift manufacturing plant. Shortly after, Centrilift offered Mr. Garrison the assembly position contingent upon the results of a medical examination conducted by Centrilift's physician. Centrilift required all entering employees in assembly positions to undergo the same medical examination. During the course of the medical examination, Centrilift required Mr. Garrison to complete a medical history form. Among other questions, the form asked whether Mr. Garrison had ever suffered: hearing loss; pain in the shoulder, arms, or hands; leg or foot problems; and back pain, strain, or surgery. Mr. Garrison untruthfully checked "no" in response to each of these questions. Centrilift's physician subsequently found no limitations on Mr. Garrison's physical abilities and recommended him for the position.
 
 
 3
 Centrilift's physician forwarded Mr. Garrison's medical history form to Centrilift's human resources department. The human resources department then obtained Mr. Garrison's past workers' compensation records from the State of Oklahoma. Mr. Garrison had received workers' compensation for several injuries arising from previous employment. He had suffered injuries to his hearing, neck, shoulder, elbow, hand, back, abdomen, lungs, knee, and feet. After learning of Mr. Garrison's previous injuries, Centrilift withdrew its conditional offer of employment.
 
 
 4
 Mr. Garrison telephoned Steven Wayne Brown, Centrilift's Manager of Human Resources for North American Operations, to inquire why Centrilift withdrew the job offer. Referring to Mr. Garrison's previous workers compensation claims, Mr. Brown explained:
 
 
 5
 So when we look at those kind of histories, we look at those in terms of where we are placing people for possible future injuries....
 
 
 6
 ...
 
 
 7
 Well, the positions that we were looking at you for are those positions that would put you in a position to likely be injured again and we don't do that.
 
 
 8
 Mr. Garrison sued Centrilift in federal district court alleging he was "denied employment on the basis of a disability or a perceived disability ... in violation of the [Americans with Disabilities Act]." After an initial jury verdict in favor of Centrilift, Mr. Garrison appealed to this court. Garrison v. Baker Hughes Oilfield Operations, Inc., 1999 WL 1101221, at *1 (10th Cir. Dec.6, 1999) (unpublished opinion) (hereinafter Garrison I). We reversed the first jury verdict because of an incorrect jury instruction and remanded for a new trial on Mr. Garrison's "claim of violation of 42 U.S.C. § 12112(d)(3)." Id. at *2.
 
 
 9
 In the second trial, the district court submitted a "mixed motive" instruction to the jury. On a special verdict form the jury found Centrilift withdrew its job offer in part for legitimate reasons. However, the jury also found Centrilift would have employed Mr. Garrison but for motives not job-related and inconsistent with business necessity. The jury awarded Mr. Garrison $3,580.36 in compensatory damages.
 
 
 10
 In post-verdict proceedings the district court also issued an injunctive judgment against Centrilift. The injunctive judgment ordered Centrilift to comply with the medical examination and inquiry provisions of the Americans with Disabilities Act. Among other specific restrictions, the injunction ordered Centrilift "not to gain medical or workers' compensation information except to convey it to appropriate medical personnel who are reviewing it to determine job applicants' abilities to perform the offered jobs." Centrilift now appeals the jury verdict and the district court's injunctive judgment.
 
 DISCUSSION
 I.
 
 11
 Centrilift argues there is insufficient evidence to support the jury verdict in favor of Mr. Garrison's Americans with Disabilities Act claim. Specifically, Centrilift argues it complied with 42 U.S.C. § 12112(d)(3) by similarly examining all entering employees, keeping exam results confidential, and using exam results only in accordance with the Act. Centrilift explains it withdrew Mr. Garrison's job offer because of false answers on his medical questionnaire, rather than because of a disability or perceived disability.[1]
 
 
 12
 "`When a jury verdict is challenged on appeal, our review is limited to determining whether the record — viewed in the light most favorable to the prevailing party — contains substantial evidence to support the jury's decision'". United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir.2000) (quoting Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir.1997)). "The jury has the `exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact.'" Id.
 
 
 13
 Under the Americans with Disabilities Act covered employers "may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of ... employment duties." 42 U.S.C. § 12112(d)(3).[2] Employers may make this offer of employment conditional on the results of the examination, if —
 
 
 14
 (A) all entering employees are subjected to such an examination regardless of disability;
 
 
 15
 (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record ... —
 
 
 16
 ... and
 
 
 17
 (C) the results of such examination are used only in accordance with this subchapter.
 
 
 18
 42 U.S.C. 12112(d)(3). Under § 12112(d)(3)(C), an employer's reasons for withdrawing a conditional job offer must be "job-related and consistent with business necessity." 29 C.F.R. § 1630.14(b)(3). Moreover, the employer may only withdraw the conditional job offer if "performance of the essential job functions cannot be accomplished with reasonable accommodation." Id. The Equal Employment Opportunity Commission further explains:
 
 
 19
 The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job, either with or without an accommodation, because of fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs.
 
 
 20
 Equal Employment Opportunity Commission, Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 6.4 (1992) (hereinafter Equal Employment Opportunities Commission Technical Assistance Manual).[3]
 
 
 21
 The record on appeal shows substantial evidence Centrilift misused Mr. Garrison's entrance examination results. Mr. Brown, Centrilift's Manager of Human Resources for North American Operations, told Mr. Garrison his offer was revoked because of a risk of "possible future injuries," and because "we don't do that." Moreover, at trial when asked what concerned him about Mr. Garrison's examination results, Mr. Brown explained "it was just the multitude of injuries in a short period of time." Under these circumstances, the jury could have determined Centrilift withdrew the job offer because of unsubstantiated speculation about future risks from a perceived disability.[4] While Mr. Garrison admitted he falsely represented his medical history, it was within the province of the jury to ascribe withdrawal of the job offer to discriminatory use of medical exam results.[5] Because substantial evidence supports this jury verdict, we leave it undisturbed.
 
 II.
 
 22
 Centrilift argues the district court improperly enjoined lawful post-offer medical inquiries. Centrilift believes the district court exceeded its authority by enjoining review of entering employees' workers' compensation records by non-medical personnel. At issue is whether the confidentiality protections of § 12112(d)(3)(B) support the district court's injunction. We review a district court's imposition of injunctive relief for abuse of discretion. Prows v. Federal Bureau of Prisons, 981 F.2d 466, 468 (10th Cir.), cert. denied, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993). The discretionary decision is "not left to a court's `inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" Albemarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). "The court's discretion is to be exercised in light of the purposes of the statute on which [the] plaintiff's suit is based." Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1230 (10th Cir.1997). However, "[t]o the extent the district court determined questions of law in interpreting a statute, we exercise de novo review." Rural Water District No. 1 v. City of Wilson, 243 F.3d 1263, 1268 (10th Cir. 2001).
 
 
 23
 Under the Americans with Disabilities Act, district courts may enjoin employers "from engaging in ... unlawful employment practice[s] ... or [grant] any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e 5(g)(1).[6] "A federal court's equity jurisdiction affords it the power to enjoin otherwise lawful activity when necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct." United States v. Holtzman, 762 F.2d 720, 724 (9th Cir.1985). See also United States v. Loew's, Inc., 371 U.S. 38, 53, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962) ("To ensure ... relief is effectual, otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined.") However, "equitable power to enjoin otherwise lawful activity ... is not often necessary or appropriate, and is therefore infrequently exercised." Holtzman, 762 F.2d at 726. It is well settled an injunction must be narrowly tailored to remedy the harm shown. Citizen Band Potawatomi Indian Tribe v. Oklahoma Tax Comm'n, 969 F.2d 943, 948 (10th Cir. 1992); Brown v. Trustees of Boston Univ., 891 F.2d 337, 361 (1st Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). See also Masterson v. Yellow Freight Sys., Inc., 1998 WL 856143 (10th Cir. Dec.11, 1998) (unpublished opinion) (district courts should consider "whether [an] injunction could be more narrowly tailored to prevent future violations of the [Americans with Disabilities Act].")
 
 
 24
 Defining lawful practices in regard to employee entrance examinations, § 12112(d)(3) of the Act "imposes no restrictions on the scope of entrance examinations; it only guarantees the confidentiality of the information gathered ... and restricts the use to which an employer may put the information." Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1273 (9th Cir.1998) (emphasis in original). Information obtained from a post-offer medical examination must be:
 
 
 25
 maintained on separate forms and in separate medical files and be treated as a confidential medical record, except that —
 
 
 26
 (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
 
 
 27
 (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
 
 
 28
 (iii) government officials investigating compliance with this chapter shall be provided relevant information on request....
 
 
 29
 42 U.S.C. § 12112(d)(3)(B). The Equal Employment Opportunity Commission clarifies:
 
 
 30
 [A]n employer should not place any medical-related material in an employee's personnel file. The employer should take steps to guarantee the security of the employee's medical information, including:
 
 
 31
 — keeping the information in a medical file in a separate, locked cabinet, apart from the location of personnel files; and
 
 
 32
 — designating a specific person or persons to have access to the medical file.
 
 
 33
 Equal Employment Opportunity Technical Assistance Manual § 6.5.
 
 
 34
 In this case, the district court's injunction limited lawful review of workers' compensation histories by employers. The injunction states, "Defendant is not to gain medical or workers' compensation information except to convey it to appropriate medical personnel who are reviewing it to determine job applicants' abilities to perform the offered jobs." While § 12112(d)(3)(B) places significant restrictions on disclosure of entering employees' medical information, it does not support the district court's injunction. The plain language of the Americans with Disabilities Act does not require only medical personnel view entering employees' workers' compensation histories. 42 U.S.C. § 12112(d)(3)(B). Moreover, regulatory compliance materials contemplate review of workers' compensation material by non-medical personnel. Equal Opportunity Commission Technical Assistance Manual §§ 6.4, 9.3. It is lawful for employers to designate a non-medical individual or individuals to review workers' compensation histories, provided other statutory requirements are met.[7] Therefore, the district court's injunction subjects Centrilift to possible contempt proceedings for engaging in employment practices permitted both by statute and by regulatory compliance materials. While the district court's equitable powers do include such a remedy, we are not convinced it is either "necessary or appropriate" in this case. Holtzman, 762 F.2d at 724. The district court's injunction was based upon evidence of only a single instance of discriminatory behavior. Moreover, the discrimination complained of occurred in 1995. There is no evidence of continuing discrimination. It is true an employer's "defiant hostility" during litigation may rise to a "cognizable danger of recurrent violations" necessitating injunctive action. Roe, 124 F.3d at 1231. However, in this case, the record on appeal does not provide evidence of a danger of recurrent violations sufficient to justify the "infrequently exercised" restriction of otherwise legal activity. Holtzman, 762 F.2d at 724. Accordingly, we reverse the district court's injunction insofar as it prohibits review of medical or workers' compensation information by non-medical personnel.
 
 III.
 
 35
 Centrilift argues the Americans with Disabilities Act "does not provide for an award of compensatory damages based on a violation of section 12112(d)(3)." Centrilift asserts compensatory damages are only available under the Americans with Disabilities Act if the plaintiff alleges discrimination on the basis of disability. The availability of compensatory damages for § 12112(d)(3) violations is a legal issue we review de novo. Rural Water District No. 1, 243 F.3d at 1268. In Griffin, we held to recover compensatory damages under § 12112(d)(2), a plaintiff need only "prove injury flowing from" the statutory violation rather than injury from discrimination based on a disability. Griffin, 160 F.3d at 595 & n. 5. In our previous opinion in this case, we held the Griffin analysis "is equally applicable to claims under § 12112(d)(3)." Garrison I, No. 98-5074, at *1. See also Griffin, 261 F.3d at 1029 (citing Cossette v. Minn. Power & Light, 188 F.3d 964, 971 (8th Cir.1999)) (Americans with Disabilities Act claimants "must establish a `tangible injury' caused by technical violation of § 12112(d) in order to recover compensatory damages"). Thus, a claimant may recover compensatory damages for tangible injury "legally and proximately caused" by violation of § 12112(d)(3). Griffin, 160 F.3d at 595 (quoting Armstrong v. Turner Indus., Inc., 141 F.3d 554, 562 n. 20 (5th Cir.1998)). Accordingly, Centrilift's argument is foreclosed by our recent precedent and the law of this case.
 
 IV.
 
 36
 Centrilift argues the district court gave two improper jury instructions. "We review de novo legal objections to jury instructions, reading the instructions as a whole." Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1247 (10th Cir.2001). "`We review the district court's decision to give a particular jury instruction for abuse of discretion.'" United States v. McClatchey, 217 F.3d 823, 834 (10th Cir.) (quoting United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir.1999)), cert. denied, 531 U.S. 1015, 121 S.Ct. 574, 148 L.Ed.2d 492 (2000).
 
 
 37
 First, Centrilift argues the district court legally erred by "instructing the jury that it could find in favor of [Mr.] Garrison if it concluded that he `successfully completed' the post offer medical examination."[8] Because Centrilift challenges the legal accuracy of the instruction, we review de novo. Rice, 260 F.3d at 1247. "The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir.), cert. denied, 528 U.S. 813, 120 S.Ct. 48, 145 L.Ed.2d 42 (1999) (quotation marks and citations omitted). "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1365 (10th Cir.1994) (quotation marks and citation omitted).
 
 
 38
 At issue in this case was whether Centrilift withdrew the conditional job offer because Mr. Garrison was dishonest or because Centrilift used examination results in a discriminatory way prohibited by § 12112(d)(3)(C). The district court's "successfully complete" instruction attempts to embody the requirement employers revoke conditional job offers upon examination results "only in accordance with this subchapter." 42 U.S.C. § 12112(d)(3)(C). The district court appears to have used the term "successfully complete" to highlight the job offer was conditional only upon the results of Centrilift's medical examination. Importantly, the district court also instructed "an employer has a right to expect honest responses to a lawful examination and/or inquiry. Therefore, if Defendant's action not to hire Plaintiff was motivated by his knowingly providing a false answer ..., Defendant cannot be held liable." We agree the "successfully complete" instruction may not flawlessly clarify the statutory framework of § 12112(d)(3). However, the district court's instructions as a whole did apprize the jury of the legal issues and its duty to decide them. Therefore, under the facts of this case, we are satisfied the "successfully complete" instruction correctly informed the jury of the governing law.[9]
 
 
 39
 Centrilift also argues there was insufficient evidence for the district court to submit a mixed-motive instruction to the jury. Once again, Centrilift relies on its contested assertion "[Mr.] Garrison never alleged any form of discrimination under the [American with Disabilities Act] to trigger a mixed-motive instruction." Because Centrilift's' argument concerns the district court's decision to give a particular instruction, we review for abuse of discretion. McClatchey, 217 F.3d at 834. "A mixed motive instruction is ... appropriate in any case where the evidence is sufficient to allow a trier to find both forbidden and permissible motives." Medlock, 164 F.3d at 553 (quotation marks and citations omitted). The same allegations and evidence which justify the jury verdict also justify the mixed motive instruction. See supra note 1 and accompanying text. Mr. Garrison has alleged Centrilift used entrance examination results to discriminate on the basis of disability. Mr. Brown's stated reasons for withdrawing Mr. Garrison's job offer, both at trial and in a recorded telephone conversation, give rise to a sufficient inference of a discriminatory motive. Therefore, the district court did not abuse its discretion in giving a mixed motive instruction.
 
 
 40
 For the above stated reasons, we AFFIRM the jury verdict, imposition of compensatory damages, and jury instructions. However, we REVERSE the district court's permanent injunction and REMAND for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Centrilift relies on the assertion "it is undisputed that [Mr.] Garrison was not disabled and never alleged that he was `regarded' as having a disability under the [Americans with Disabilities Act]." We disagree. Mr. Garrison's complaint alleges he was "denied employment on the basis of a disability or a perceived disability ... in violation of the [Act]." The pre-trial order for the second trial does not show Mr. Garrison's disability status was uncontested. On the contrary, the second pre-trial order characterizes the "[r]easons [the] Defendant withdrew the offer of employment" as an issue of fact remaining for trial. Mr. Garrison's counsel aggressively cross-examined Mr. Brown with respect to disability discrimination. In closing statements, Mr. Garrison argued Centrilift withdrew the offer because of an unjustified fear of future injuries to Mr. Garrison. On appeal, Mr. Garrison argues discrimination based on these fears "was the type of case [he] proved." Finally, contrary to our rules, Centrilift has not included in the record on appeal transcripts, a pre-trial order, a jury verdict form, or any other documents from the first jury trial that verify Mr. Garrison's disability status is undisputed. 10th Cir. Rule 10.3(B) (requiring a party asserting an issue "provide a record sufficient for considering that issue").
 
 
 [2]
 Centrilift and the Tulsa Area Human Resources Association, asamici curiae, argue Mr. Garrison is not covered by the Americans with Disabilities Act because under Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), Mr. Garrison's injuries could not be considered a disability. Sutton held myopic airline pilot applicants were not disabled under 42 U.S.C. § 12102 where use of corrective lenses gave the applicants 20/20 visual acuity. Id. at 488, 119 S.Ct. 2139. Sutton is not controlling because Mr. Garrison had more serious injuries to his hearing, neck, shoulder, elbow, hand, back, abdomen, lungs, knee, and feet and no comparable corrective measures. Also, Sutton does not address the remedies available to entering employees under the medical examination and inquiry provisions of § 12112(d)(3). Cf. Griffin v. Steeltek, Inc., 160 F.3d 591, 594 (10th Cir.1998), cert. denied, 526 U.S. 1065, 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999) (holding § 112(d)(2) claims arise out of impermissible pre-offer hiring practices, not whether job applicant is disabled).
 
 
 [3]
 While the Equal Employment Opportunity Commission's Technical Assistance Manual is not controlling by reason of its authority, we may properly "draw guidance from the views" expressed thereinBragdon v. Abbott, 524 U.S. 624, 647, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); 42 U.S.C. § 12206(c) (authorizing Equal Employment Opportunity Commission to offer technical assistance on compliance with subchapter I of the Americans with Disabilities Act).
 
 
 [4]
 Our previous decision does not preclude allegations Centrilift used examination results to discriminate on the basis of a perceived disability in violation of § 12112(d)(3)(C). Our previous decision held, contrary to jury instructions in the first trial, a plaintiff in general need not show disability to recover under § 12112(d)(3)Garrison I, No. 98-5074, at *1. This is because § 12112(d)(3)(A) and (B) claims arise out of an employer's post-offer hiring practices and are not related to an entering employee's disability status. Cf. Griffin, 160 F.3d at 594-95. On the other hand, a violation of § 12112(d)(3)(C) is contingent not only upon whether an employer conducted a post-offer medical examination, but also upon the entering employee's ability to demonstrate use of collected information not "in accordance" with subchapter I of the Americans with Disabilities Act. 42 U.S.C. § 12112(d)(3)(C). Thus, to recover under subsection 12112(d)(3)(C) a plaintiff must show the employer used collected medical information to discriminate on the basis of a disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.14(b)(3). We remanded for a new trial on Mr. Garrison's § 12112(d)(3) claim, which included the possibility of recovery for improper practices under subsections (A) or (B) as well as discriminatory use of exam results under subsection (C). Garrison I, No. 98-5074, at *2. Therefore, nothing in our previous holding precluded Mr. Garrison from alleging Centrilift used exam results to discriminate in violation of § 12112(d)(3)(C).
 
 
 [5]
 Theamici curiae argue the district court opinion jeopardizes employers' "lawful right to refuse to hire a person who knowingly provides a false answer in a post-offer inquiry." We do not hold the Americans with Disabilities Act forbids withdrawing conditional job offers from entering employees who lie on medical questionnaires. See Equal Employment Opportunity Commission Technical Assistance Manual § 9.8. Rather, we hold sufficient evidence existed in this case of an alternative discriminatory motive to sustain a jury verdict in favor of Mr. Garrison.
 
 
 [6]
 Section 12117 of the Americans with Disabilities Act incorporates the statutory remedies available under Title VII of the Civil Rights Act codified at 42 U.S.C. § 2000e 5. 42 U.S.C. § 12117(a)
 
 
 [7]
 Nevertheless, employers may notuse gathered workers' compensation information however it chooses. Employers may only withdraw job offers for reasons "in accordance" with subchapter I of the Americans with Disabilities Act. 42 U.S.C. § 12112(d)(3)(C). Where substantial evidence shows an employer used entrance examination information to withdraw a job offer for reasons not in accordance with the act, a jury verdict favoring an entering employee will stand.
 
 
 [8]
 This instruction reads:
 You are instructed that in order to recover on his claim under the [American with Disabilities Act], Plaintiff must prove the following elements:
 
 
 [1]
 Defendant made Plaintiff an offer of employment conditioned upon Plaintiff's successful completion of a medical examination by Defendant's doctor; and
 
 
 [2]
 Plaintiff successfully completed the medical examination by Defendant's doctor
 A separate related instruction further explained:
 To "successfully complete" a medical examination and/or inquiry means that the employer conducted a medical examination and/or inquiry of Plaintiff and from that concluded Plaintiff was capable in performing the work at Defendant's facility for which Plaintiff had been conditionally hired.
 Plaintiff does not "successfully complete" a medical examination and/or inquiry if the conditional job offer is withdrawn based on the results of such examination and/or inquiry and the reasons for the withdrawal of the offer are job-related and consistent with business necessity.
 
 
 [9]
 Amici curiae argue the jury instructions were confusing because in one instruction the district court used the term "examination" alone and in another instruction used both "examinations and/or inquiries." The district court's inconsistency is understandable since the statute and regulatory materials evince the same discrepancy. Compare 42 U.S.C. § 12112(d)(3) ("A covered entity may require a medical examination....") with Equal Employment Opportunities Commission Technical Assistance Manual § 6.4 ("The employer may make a job offer ... conditioned on the satisfactory outcome of a medical examination or inquiry."). This case presents no opportunity to resolve these differences. Neither Centrilift nor amici curiae point to an implication of the divergence in the instructions which would undermine the jury's understanding of the legal issues or its duty to decide them.