BERNICE B. DONALD, Circuit Judge,
concurring in part and dissenting in part.
I concur with this Court’s welcome abandonment of its past interpretation of the Americans with Disabilities Act, which read the word “solely” into the ADA’s express “because of’ causation standard. *332 I dissent, however, from the majority’s view that under the ADA the plaintiff alone must shoulder the burden of persuasion as to causation. I write separately, and at length, to describe an alternative approach to this controversy which, I believe, accurately reflects the relevant legislative history and case law.
Now that we have recognized our error in importing language from the Rehabilitation Act into the ADA without a proper basis, the notion of returning to the plain statutory language of the ADA has a natural allure. Likewise, the call to resist importing language from yet another statute, Title VII, appeals to our sense of symmetry and order. But, although the plain language of the statute is the proper starting point in any analysis, the meaning of even the simplest term cannot be fully ascertained without taking into account the context, including historical and grammatical, in which it is found.
In Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court formulated a distinctive analytical approach to Title VII “mixed-motive” cases, i.e., those in which the parties to an employment discrimination action claim both legitimate and illegitimate bases for the adverse employment decision. Setting aside the familiar McDonnell Douglas/Burdine framework in this context, a fractured Court established a two-step burden-shifting paradigm under which the plaintiff must first show by a preponderance of the evidence that discrimination was a substantial or motivating factor in the employment decision. Id. at 252, 109 S.Ct. 1775. The burden of persuasion then shifts to the employer, who, to escape liability, must show by a preponderance of the evidence that “its legitimate reason, standing alone, would have induced it to make the same decision.”
Although six justices joined in the Price Waterhouse judgment, there was sharp division among them as to the proper characterization of Title VII’s “because of’ standard of causality. A plurality of the justices declared that to “construe the words ‘because of as colloquial shorthand for ‘but-for causation,’ ... is to misunderstand them.” Id. at 240, 109 S.Ct. 1775. The plurality took the “words to mean that gender must be irrelevant to employment decisions.” Id. Justice O’Connor, on the other hand, in her concurrence with the judgment, “disagree[d] with the plurality’s dictum that the words ‘because of do not mean ‘but-for’ causation; manifestly they do.” Id. at 262-63, 109 S.Ct. 1775 (emphasis added). To Justice O’Connor, the burden-shifting mechanism prescribed by the Court was an appropriately balanced, equitable means of determining but-for causation, rather than a substitute for it. As she described the approach,
the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made “because of’ the plaintiffs protected status. Only then would the burden of proof shift to the defendant to prove that the decision would have been justified by other, wholly legitimate considerations.
Id. at 278, 109 S.Ct. 1775 (emphasis added).
According to O’Connor, this approach is warranted because at times a but-for test imposed upon the plaintiff alone “demands the impossible.” Id. at 264, 109 S.Ct. 1775 (quoting Malone, Ruminations on Cause-In-Fact, 9 Stan. L.Rev. 60, 67 (1956)). Because the “deterrent purpose of Title VII is disserved by a rule which places the burden of proof on plaintiffs on the issue of causation in all circumstances,” id. at 278, *333 109 S.Ct. 1775, O’Connor endorsed the shared-burden evidentiary framework as applicable to “all disparate treatment plaintiffs where an illegitimate consideration played a substantial role in an adverse employment decision.” Id. at 279, 109 S.Ct. 1775.
In its plurality opinion, two concurrences, and a dissenting opinion, Price Waterhouse put forth at least four views on the definition of Title VIPs “because of’ standard. The Court, however, failed to arrive at a consensus on the matter. In place of a definition, the Court provided a procedural mechanism that is triggered when a challenged adverse employment decision was based on both illegitimate and legitimate reasons.
In the wake of Price Waterhouse, and partially in response to it, Congress amended Title VII, adopting much of the Court’s terminology but replacing the decision’s procedural scheme with one of Congress’s own making. Landgraf v. USI Film Prod., 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The 1991 amendments retained the “because of’ language in defining what is forbidden:
It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin ...
42 U.S.C. § 2000e-2(a)(l) (emphasis added). As to the evidentiary burden, the revised statute provided that “[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.” Id. at § 2000e-2(m) (emphasis added). Finally, a companion enforcement provision was added:
On a claim in which an individual proves a violation ... and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court (i) may grant declaratory relief, injunctive relief ... and attorney’s fees and costs ... and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment ...
Id. at § 2000e-5(g)(2)(B) (emphasis added).
Taken together, these three provisions represent both an acceptance and a subtle retooling of the Price Waterhouse paradigm. Despite the Court’s failure to agree on a definition of the statute’s “because of’ standard, Congress retained this language unaltered and undefined, in apparent recognition that it is not the definition of the term but the associated procedures that matter (and in apparent agreement with Justice White’s observation that “[i]t is not necessary to get into semantic discussions on whether the [Court’s] approach is “but-for” causation in another guise”). See Price Waterhouse, 490 U.S. at 259, 109 S.Ct. 1775. The phrase “motivating factor” was adopted, not as the first of a two-step liability determination but rather as the stand-alone causation standard in proving liability. The “same decision” test was also adopted from the opinion, but as an affirmative defense to damages rather than to liability.
The above-described alterations to Title VII appear at first glance to be substantial. The appearance of significance, however, fades considerably upon close examination. Under the new Title VII, a mixed motive plaintiff could prevail on a “moti *334 vating factor” showing alone, but could not be awarded damages if the defendant could convince the fact-finder that it would have made the same decision anyway. This is, for all practical purposes, the same substantive outcome as under Price Waterhouse. The only real difference is that attorney’s fees could be awarded to the plaintiff even where but-for causation was disproved.
The majority reviews this history and declares that it leads to one of only two possible views: Either 1) Price Waterhouse established the meaning of “because of’ in the panoply of anti-discrimination statutes with similar standards, and Congress ratified this holding in its amendments to Title VII; or 2) The Title VII amendments effectively nullified Price Waterhouse as it is applies to both Title VII and all other the civil rights statutes.
The first of these two views is plainly off the mark. Price Waterhouse does not define the “because of’ standard but rather provides a procedural mechanism to be used where this undefined standard applies. More importantly, Congress did not simply codify the Price Waterhouse holding. Outright ratification would have meant incorporation of the two-step burden shifting described in that decision. Alternatively, Congress could have effected ratification by acquiescing in the Court’s interpretation and taking no action at all. Instead, Congress departed from and expanded upon Price Waterhouse by 1) allowing liability under Title VII to be established by demonstrating that an impermissible criterion was a motivating factor behind an employment decision and 2) allowing certain remedies even when the employer has shown that it would have taken the same action for legitimate reasons, so long as discrimination was a motivating factor. Although, practically speaking, these changes do not make a great deal of difference, they were important enough to Congress to warrant a complex modification of the statute to distinguish the new procedural arrangement from that set forth in Price Waterhouse.
But the second view is not accurate either. Certainly the amendments supersede the Price Waterhouse decision to the extent that the new Title VII’s standards and remedies are different from those set forth in the decision. But the notion that these amendments were intended to nullify Price Waterhouse’s application to other antidiscrimination statutes is without any logical or historical foundation. As Judge Stranch points out, Congress enacted the ADA the year after Price Waterhouse and the year before the 1991 amendments. The ADA utilizes the same “because of’ language that the Court had just confronted and interpreted and it contains a provision explicitly linking the statute to Title VII. And as Judge Stranch indicates, we must presume Congress was well aware of the prevailing law at the time with regard to the interpretation of the “because of’ standard in civil rights cases, i.e., Price Waterhouse. The circumstances of the ADA’s enactment thus effectively rebut the contention that Congress intended to nullify Price Waterhouse as it applied to the ADA.
Although Price Waterhouse dealt with Title VII, various courts, for various reasons, have found that its principles apply to cases brought under other antidiscrimi-nation statutes, like the ADA, containing the same “because of’ standard. Parker v. Columbia Pictures Indus., 204 F.3d 326, 336-37 (2d Cir.2000) (collecting cases). Of course, the Sixth Circuit is not among the courts that have found that mixed motive analysis is appropriate under the ADA because the Court has been bound by the aforementioned flaw in its reading of the statute, which the Court with the present *335 opinion now corrects. See Layman v. Alloway Stamping & Mach. Co., Inc., 98 Fed.Appx. 369, 376 (6th Cir.2004) (“Despite the persuasive textual argument and the weight of authority from other circuits, this court has established a standard to which this panel is bound.”).
I believe the relationships among Pnce Waterhouse, Title VII, and the other civil rights statutes to be considerably more nuanced than the majority indicates. I therefore offer below my own list of tenable views of the relevant history, based upon actual positions taken by the various circuit courts, along with an analysis of the merits of each.
1) Price Waterhouse burden shifting applies to the ADA: Under this view, Price Waterhouse was nullified in 1991 as to Title VII mixed motive discrimination claims but not as to similar claims brought under other civil rights statutes with causation standards parallel to that of Title VII prior to the 1991 amendments.
2) “Motivating factor” is the causation standard under the ADA, based solely on an analysis of the “because of’ standard’s “plain meaning”: In the view of some courts, the effective causation standard found in the various civil rights statutes is the same as the Title VII standard, not because of importation or linkage of concepts from one statute to another, but based solely on the shared “because of’ language. The issue of burden shifting is often left unaddressed under this view.
3) Neither Price Waterhouse nor Title VII standards apply to the ADA. Because the statute lacks explicit mixed-motive language, the ADA’s “because of’ standard means “but for” causation. According to at least one court, and in the view of the majority, under the ADA the plaintiff must prove that disability was the but-for cause of the challenged adverse employment action; the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of disability.
4)“Motivating factor” is the causation standard for liability under the ADA and the “same decision” test applies to remedies, owing to the ADA’s incorporation provision. According to this view, the explicit link between the ADA and Title VII incorporates both the “motivating factor” and the “same decision” tests into the ADA, giving the statutes identical standards and remedies in perpetuity.
Each of these, more or less, distinct views is examined in detail in what follows.

The Continuing Applicability of Price Waterhouse View

Since shortly after the Price Water-house decision was rendered and Congress responded by amending Title VTI, the lower courts have confronted whether the mixed-motive frameworks apply in the context of other civil rights statutes. From 1992 through 1996, a number of circuit courts determined (or assumed) that Price Waterhouse applied to Title VII retaliation claims, even though the statutory provisions governing such claims relied on an independent, unembellished “because of’ standard and lacked any mixed-motive, burden-shifting language. See, e.g., Tanca v. Nordberg, 98 F.3d 680, 681 (1st Cir.1996) (holding that while Title VII’s mixed motive provisions do not apply to Title VII retaliation claims, the Price Waterhouse burden-shifting rule does); see also Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 893 (7th Cir.1996); Miller v. CIGNA Corp., 47 F.3d 586, 596 n. 8 (3d Cir.1995); Brown v. E. Miss. Elec. Power Ass’n, 989 F.2d 858, 863 (5th Cir.1993); Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039-41 (2d Cir.1993); Griffiths v. *336 CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470-71 (10th Cir.1992).
In subsequent years, other courts have explicitly extended Price Waterhouse’s reach well-beyond the Title VII context, often with little or no analysis. See Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir.2009) (finding that in a § 1981 claim involving mixed motives, “[w]e focus on the mixed motives analysis under Price Water-house);” Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135-36 (8th Cir.1999) (“To trigger Price Waterhouse analysis [under the ADA], a plaintiff must show that ‘an impermissible motive played a motivating part in an adverse employment decision.’ ”).
More often than not though, courts have applied a mixed motive analysis without indicating whether the analysis came from, or was justified by, Price Waterhouse or the 1991 Title VII amendments. See Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 965 (10th Cir. 2002) (quoting a Title VII case in support of applying mixed motive analysis in an ADA context: “A mixed motive instruction is ... appropriate in any case where the evidence is sufficient to allow a trier to find both forbidden and permissible motives.”); Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 42 (1st Cir.1998) (assuming that either Price Waterhouse or Title VII mixed motive analysis applies to the ADA, but declining to decide which).
Based upon this long history of applying Price Waterhouse’s mixed motive analysis beyond the confines of Title VII discrimination suits, there was, until recently, every reason to think this analysis had continuing applicability to the ADA. This was a sensible conclusion, as there is nothing in the Price Waterhouse analysis of the “because of’ standard and the associated evi-dentiary burden that pertains uniquely to Title VII; the opinion’s principles are sweeping and broadly applicable. Further, as previously discussed, Congress’ enactment of the ADA immediately after Price Waterhouse was decided gives rise to a reasonable inference that Congress intended for the Court’s interpretation of the “because of’ standard to apply to the ADA.
In 2009, however, the Supreme Court cast considerable doubt upon the applicability of mixed-motive analysis to statutes other than Title VII. In Gross v. FBL Financial Services, the Court raised sua sponte the question of whether the Age Discrimination in Employment Act of 1967 (ADEA) authorized a mixed-motive age discrimination claim. 557 U.S. 167, 169, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). The Court concluded that it does not. Id. After a cursory examination of the relevant case law and statutory history, the Court examined the ADEA’s causation standard and determined that “because of’ means that a plaintiff must prove by a preponderance of the evidence “that age was the ‘but-for’ cause of the challenged employer decision.” Id. at 178, 129 S.Ct. 2343. Furthermore, the “burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.” Id. at-180, 129 S.Ct. 2343. To those who would consider the Price Waterhouse controlling, the Court indicated that Price Waterhouse was so fraught with problems in application that there was no “perceivable benefit to extending its framework to ADEA claims.” Id. at 179, 129 S.Ct. 2343. The Court also expressed grave doubt as to whether it would “have the same approach were it to consider the question [raised in Price Waterhouse ] today in the *337 first instance.” Id. at 178-79, 129 S.Ct. 2343.
The Court does not go so far as to abrogate Price Waterhouse, but it certainly signals that the Court might do so if the opportunity presented itself. And, although the holding addresses only the ADEA, its stark language leaves little doubt that the present Court shares little of Justice O’Connor’s concern that placing the burden of proof entirely on the plaintiffs shoulders “demands the impossible” and disserves the deterrent purpose of Title VII.
Because Gross addressed only the ADEA, there is a strong argument that the Price Waterhouse burden-shifting doctrine remains controlling law outside of the ADEA context.[1] Still, the shadow of Gross is long and troubling. See Bolmer v. Oliveira, 594 F.3d 134, 148 (2d Cir. 2010). This Court can hardly be faulted for being reluctant to hang its judicial hat on such a wobbly peg.
“Because of ’ Equals “Motivating Factor”: The Plain Language View
As previously mentioned, many mixed-motive decisions have adopted a “motivating factor” standard with minimal analysis, finding this interpretation “under a plain reading of the statute.” Pinkerton v. Spellings, 529 F.3d 513, 516-17 (5th Cir. 2008). As a preliminary matter, I take issue with any characterization of this difficult subject as plain or obvious. If the issue had been simple, the Supreme Court would not have labored over it so long and unsuccessfully in Price Waterhouse.
Emblematic of this approach is Head v. Glacier Northwest, Inc., 413 F.3d 1053 (9th Cir.2005). The court first rejected “solely because of’ as the appropriate causation standard under the ADA, just as we have. Id. at 1065. The court then concluded that a motivating factor standard is most consistent with the “plain language” and the purposes of the statute, holding that “the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiffs disability or request for an accommodation.” Id. Finally, the court provided “Jury instructions required under the ADA” reflective of its holding:
[Although the statute uses “because of’ language, the ADA plaintiff need not show more than that impermissible motives were a “motivating factor” in any adverse action. The approach also reflects the fact that the evidence in a particular case may not suggest more than one possible reason for the challenged action.
Under the first alternative ... if the judge determines that the only reasonable conclusion the jury could reach is that discriminatory animus is the sole reason for the challenged action or that discrimination played no role in the decision, the jury should be instructed to determine whether the challenged action was taken “because of’ the prohibited reason.
The second alternative applies in a case in which the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate. In that case the jury should be instructed to determine whether the *338 discriminatory reason was “a motivating factor” in the challenged action.
Id. at 1065-66 (emphasis added).
What is striking, and in my view alarming, about these jury instructions is that there is no hint of either the balanced burden-shifting approach of Price Water-house or the modified approach of the present-day Title VII. Motivating factor is the causation standard, and apparently the end of the story.[2] This view of the motivating factor standard is entirely untethered from its historical moorings and dispenses, without justification, the backstop provided by the “same decision” test.
Perhaps the court in Head was fully aware that it was omitting a step. Perhaps it intentionally addressed only the issue of liability, leaving unspoken but implied the determination of damages, which would require giving the defendant the opportunity to show it would have taken the same action absent any discriminatory animus. But there is no evidence of such awareness or intention and the omission invites considerable misunderstanding.
Whatever causation standard this Court adopts, our opinion should provide clear instruction as to how that standard is to be applied procedurally. I conclude that it is insufficient, and perilous, to simply declare that, under the ADA, “because of’ means “motivating factor,” without also setting forth the second half of the Price Water-house/Title VII formula.

“Because of’ Equals “But-for”: The Other Plain Language View

In Gross v. FBL Financial Services, Inc. the Supreme Court examined the “plain language” of the ADEA’s “because of’ standard and concluded that “a plaintiff must prove that age was the ‘but-for’ cause of the employer’s adverse decision.” 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). What is most noteworthy about Gross is not this conclusion that “but-for” is the proper causation standard. After all, Justice O’Connor’s Price Water-house concurrence concluded the same thing. Price Waterhouse, 490 U.S. at 262-63, 109 S.Ct. 1775. It is the Court’s conclusion that no burden shifting is allowed that marks the decision’s real importance. According to Gross, the burden of proof is the plaintiffs alone. Id. at 180, 129 S.Ct. 2343.
For the last three years, the lower courts have grappled with the implications of Gross outside of the ADEA context. Particularly noteworthy is a recent Seventh Circuit’s decision concluding that Gross’s holding applies with full force to actions brought under the ADA: “a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice.” Serwatka v. Rockwell Automation, Inc., *339 591 F.3d 957, 962 (7th Cir.2010) (emphasis added).
The court examined and rejected the view that Price Waterhouse’s interpretation of Title YII’s “because of’ standard should apply to the ADA. Id. at 961. Just as the majority does here, the court adapted Gross’s reasoning and concluded that “a mixed-motive claim will not be viable under that statute.” Id.
Gross’s rejection of mixed-motive analysis under the ADEA is predicated on a statement made early on in the opinion: “Because Title VII is materially different with respect to the relevant burden of persuasion, ... [the Court’s Title VII decisions] do not control our construction of the ADEA.” 557 U.S. at 173, 129 S.Ct. 2343. This reasoning simply does not withstand scrutiny applied to the ADA Although Title VII is now different from the ADA “with respect to the relevant burden of persuasion,” at the time the ADA was enacted, and thus the time Congress was expressing its intent, the standards were the same. Serwatka’s repudiation of Price Waterhouse mixed motive analysis under the ADA is thus contrary to the relevant statutory history and represents a radical departure from established law.
The Seventh Circuit’s decision to discard its own precedent and return to a time before Price Waterhouse is insufficient reason for this Court to do likewise. Although some may argue that the decision anticipates where the Supreme Court is headed with regard to the ADA, this Court’s duty is to apply the law as it is, not as it might someday be.

The Explicit Link View

Athough the ADA is a separate and distinct statute from Title VII, the ADA does not contain its own enforcement provisions. Instead it incorporates the “powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9” of Title VII. 42 U.S.C. § 12117(a). The five provisions referenced in this incorporating provision are summarized as follows:
42 U.S.C.2000e-4 (Equal Employment Opportunity Commission): Sets forth the powers, composition, etc. of the EEOC.
42 U.S.C.2000e-5 (Enforcement Provisions): Describes powers of the EEOC to prevent unlawful employment practices, cross-referencing the definitions of such practices in 2000e-2 and 2000e-3; describes process of filing charges with the EEOC and related State or local enforcement proceedings; sets forth the rules for filing related civil actions; and specifies the remedies available to the plaintiff in such actions.
42 U.S.C.2000e-6 (Civil Actions by the Attorney General): Sets forth the procedures under which the Attorney General may bring action against employer engaged in unlawful employment practices.
42 U.S.C.2000e-8 (Investigations): Describes evidentiary issues pertaining to charges filed under 2000e-5.
42 U.S.C.2000e-9 (Conduct of hearings and investigations pursuant to section 161 of Title 29): Links the EEOC’s powers to that of the National Labor Relations Board.
The only provision among these five related to remedies is § 2000e-5. The only subsection pertaining to the issues before this Court is § 2000e-5(g)(2)(B), which provides certain relief and prohibits other relief under specific circumstances.
Most of the circuit courts that have reviewed the matter have either assumed or concluded that the ADA incorporates the entire procedural scheme from Title VII: *340 the “motivating factor” standard for liability expressed in § 2000e-2(m) and the “same decision” defense to damages set forth in § 2000e-5(g)(2)(B). See Doane v. City of Omaha, 115 F.3d 624, 629 (8th Cir.1997) (recognizing that 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B) apply in actions brought pursuant to the ADA); see also Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir.1999); Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir.1996); Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir.1995).
The Serwatka v. Rockwell Automation, Inc. decision by the Seventh Circuit challenges the assumptions implicit in these decisions. 591 F.3d 957, 962 (7th Cir. 2010). The court notes that Title VII’s motivating factor test appears in the statute’s liability section, 2000e-2(m). The ADA’s incorporation of “powers, remedies, and procedures” does not directly reference this provision and, Serwatka reasons, the “motivating factor” standard is therefore not incorporated into the ADA. Id.
The question that Serwatka leaves inadequately addressed is this: If the ADA’s incorporation provision does not incorporate the motivating factor test, what does it incorporate with regard to remedies in civil suits? To answer this question, we must scrutinize more closely 42 U.S.C. § 2000e-5(g)(2)(B), keeping in mind that the ADA provides no other enforcement or remedies provision:
On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
(i) may grant declaratory relief, injunc-tive relief (except as provided in clause
(ii)), and attorney’s fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).
This provision does two things: it permits certain relief (declaratory and in-junctive relief and attorneys fees) and it prohibits other relief (e.g., damages, reinstatement orders). But this permitting and prohibiting is within a very narrow context, i.e., when the employee has demonstrated that discrimination was a motivating factor in the adverse employment decision under § 2000e-2(m) and the employer has, in turn, proven that he would have made the same decision had discriminatory animus not been a factor.
By incorporating this provision into the ADA, Congress effectively declared that ADA plaintiffs are entitled to the remedies (and the limits on remedies) described therein. Since these remedies have meaning only in the context just described, it is more than reasonable to assume that the entire context, meaning both the motivating factor test and the same decision test, is also incorporated into the ADA. This conclusion is underscored by the fact that 2000e-2(m), the motivating factor test for liability, is expressly referenced (twice) in this expressly incorporated provision.
Serwatka bases its contrary assumption on a quote from a law student note stating, “The motivating factor amendment [to Title VII] is not a power, remedy, or procedure; it is, instead, a substantive standard of liability.” 591 F.3d at 962 (quoting John L. Flynn, Note, Mixed-Motive Causation Under the ADA: Linked Statutes, Fuzzy Thinking, and Clear Statements, 83 Geo. L.J.2009, 2042 (1995)). What this statement ignores is that Title VII’s remedies provision assumes the application of its substantive standard of liability. Perhaps *341 more importantly, to effectively edit out the reference to 2000e-2(m) is to render Title VII’s only remedies section devoid of meaning as to the ADA, nullifying Congress’s clearly expressed intent to incorporate into the ADA Title VII’s remedies. Under the most basic rules of statutory construction, such a reading is impermissible. See Broad. Music, Inc. v. Roger Miller Music, Inc., 396 F.3d 762, 769 (6th Cir.2005) (“Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless.”); see also Green v. Bock Laundry Machine Co., 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring in the judgment) (stating that the Court’s task is to give meaning to the law in a way that avoids producing an absurd result). The only interpretation of the ADA’s incorporation provision that does not render its incorporation of § 2000e-5(g)(2)(B) meaningless is that the ADA incorporates Title VII’s two-part burden-shifting framework.

Conclusion

To construe the debate over the ADA’s causation standard as a war over two catch-phrases — “but-for” and “motivating factor” — is to misunderstand the real nature of the issue. If the definition of “because of’-were truly what was at issue here, we would have to conclude that Justice O’Connor in Price Waterhouse and Justice Thomas in Gross are in complete agreement, for they both opined that “because of’ means “but-for.” But of course these opinions are diametrically opposed to one another. Price Waterhouse held that the plaintiffs burden of persuasion is limited to showing that discrimination was a substantial factor in an adverse employment decision, with the burden then shifting to defendant to rebut the presumption of but-for causation. Gross held that, under the ADEA at least, the burden of proof to establish but-for causation is plaintiffs alone.
It is worth noting that some courts have actually defined “motivating factor” and “but-for” as meaning precisely the same thing. In a case often cited in support of the “motivating factor” viewpoint, the Seventh Circuit stated,
To be a motivating factor, then, the forbidden criterion must be a significant reason for the employer’s action. It must make a difference in the outcome of events that it can fairly be characterized as the catalyst which prompted the employer to take the adverse employment action, and a factor without which the employer would not have acted.
Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1033-34 (7th Cir.1999) (emphasis added). In other words, a motivating factor is a but-for cause. See Black’s Law Dictionary 212 (7th ed.1999) (defining but-for cause as “[t]he cause without which the event could not have occurred.”).
Viewed in this light, the question before the Court is really not about causation standards at all, but about the appropriate sharing of the burden of proof. Were it not for the ADA’s provision linking it to Title VII’s remedial scheme, I would conclude that Price Waterhouse established the appropriate burden-shifting paradigm applicable to the ADA’s “because of’ standard. By linking the two statutes, however, Congress apparently intended the modest revision of Price Waterhouse’s burden-shifting to apply to both Title VII and the ADA. Accordingly, I would hold that for actions brought under the ADA, “motivating factor” is the applicable causation standard for establishing liability, with the “same decision” test operating as an affirmative defense to a claim of damages. Because I believe it trades one over *342 reaching interpretation of the statute for another, I respectfully dissent from the majority’s importation of Gross’s but-for causation standard into the ADA.

. At least one .court, the Fifth Circuit, has taken a stand along these lines, declaring that Price Waterhouse still controls Title VII retaliation claims post-Gross, in keeping with that court’s longstanding precedent. Smith v. Xerox Corp., 602 F.3d 320, 329-30 (5th Cir. 2010).

. The Head jury instructions, provided here in their entirety, are extracted from an earlier Ninth Circuit Title VII decision, Costa v. Desert Palace, 299 F.3d 838 (9th Cir.2002), aff’d, Desert Palace v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In Costa, the court held that "the jury should be instructed to determine first whether the discriminatory reason was a 'motivating factor’ in the challenged action.” Id. at 856-57 (emphasis added). "[I]f the jury then finds that the employer has proved the ‘same decision’ affirmative defense by a preponderance of the evidence, 42 U.S.C. § 2000e-5(g)(2)(B), the employer will escape the imposition of damages and any order of reinstatement, hiring, promotion, and the like, and is liable solely for attorney’s fees, declaratory relief, and an order prohibiting future discriminatory actions.” Id. at 857. Head omits this second portion of Costa, leaving the reader to conclude that whether discrimination was a "motivating factor” is the only issue to be decided by the finder-of-fact.